OM PRAKASH, M.D., P.C., and OM PRAKASH, M.D., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Om Prakash, M.D., P.C. v. Commissioner
Docket No. 4533-87
United States Tax Court
T.C. Memo 1990-106; 1990 Tax Ct. Memo LEXIS 108; 59 T.C.M. (CCH) 5; T.C.M. (RIA) 90106; March 1, 1990
*108 Respondent filed an amendment to answer after petitioners had made admissions during discovery on original pleadings. Petitioners then moved to withdraw admissions and asserted that respondent had reneged on an alleged agreement concerning matters which were the subject of the admissions. Held, petitioners have failed to show that competing evidence would be presented at trial which would aid in determination of the merits of the case, and respondent has shown that he would be prejudiced by withdrawal of the admissions, so the motion is denied. James J. Mahon, for the petitioners. Diane R. Mirabito and Andrew J. Mandell, for the respondent. WOLFE
*110 MEMORANDUM FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case is before the Court on petitioners' motion to withdraw their admissions and on respondent's motion to strike certain allegations in petitioners' motion for withdrawal of admissions and in the affidavit of petitioners' former counsel, Larry Kars. [1]
During discovery, counsel for petitioners made admissions *110 that pertain to items of income not included in the original notices of deficiency. Respondent then amended his answer and determined additional deficiencies on items of income that were the subject of petitioners' admissions. The issue for decision is whether petitioners may withdraw their representative's admissions on the grounds that respondent reneged on an alleged negotiated agreement concerning matters which were the subject of the admissions. FINDINGS OF FACT Om Prakash, M.D., P.C., (the corporate petitioner) is a New York professional corporation which provides psychiatric services. Om Prakash, M.D. (petitioner) is the sole shareholder and sole employee of the corporate petitioner. In 1983, respondent began an examination of the corporate petitioner's returns for the fiscal years ending April 30, 1979, 1980, 1981, and 1982 and of petitioner's individual returns for the years ending December 31, 1979, 1980, 1981, and 1982. Among the numerous items examined were deposits to petitioner's bank accounts totaling $ 42,385. On the basis of a bank-deposits analysis, respondent concluded that the deposits were in payment for services provided by petitioner. These payments *111 never had been reported as income to the corporation or to petitioner. The examiner who began the audit referred the case to the criminal investigation division. It declined to pursue an investigation and returned the case to the examination division in September, 1985. By that time, the first examiner had left the IRS and agent Hy Heller (Heller) was assigned to petitioners' returns. In a report dated June 19, 1986 (the Heller report), Heller noted that some items were still unresolved, that many prior adjustments appeared to have been "arbitrarily made," and that petitioners' authorized representative, Harold Bernstein, had been able to refute the proposed adjustments "by a combination of documentation, & verbal explanation, and clarification." Heller did not specify either the "arbitrarily made" adjustments or the items which had been documented, explained, and clarified. Heller further noted that when final adjustments were made, petitioner was permitted to redeposit "amounts which were ascertained as corporate income fees taxable to [the corporate petitioner]" into the corporate account and thus avoid taxation on constructive dividends. Heller stated that he was unable *112 to determine to which corporate fiscal year the deposits belonged. He made an allocation between the April, 1980 and April, 1981 corporate years. The corporate petitioner's representative agreed to the taxation of these redeposited amounts as corporate income. The corporate petitioner paid the resulting deficiencies *111 and on June 19, 1986, executed Form 870 covering the redeposits and other items not in issue in the present case. The corporate petitioner did not consent to any addition to tax under section 6653(b). On December 31, 1986, respondent issued a statutory notice of deficiency to petitioner with respect to unagreed items for the years 1979-1982 and additions to tax under section 6653(a). Respondent also issued a statutory notice to the corporate petitioner regarding the section 6653(b) addition to tax on the fiscal 1980 and 1981 returns. Larry Kars, an attorney formerly employed by respondent's District Counsel, filed petitioners' joint petition on February 24, 1987, and respondent answered on April 15, 1987. In support of the section 6653(b) addition to tax for fraud on the part of the corporate petitioner, respondent stated in the answer, inter alia, that -- *113 through an analysis of Dr. Prakash's accounts respondent determined that $ 31,524 of unreported Om Prakash MD PC corporate funds were deposited into Dr. Prakash's personal accounts for the period May 1, 1979 to April 30, 1980 * * * [and] $ 10,861 for the period May 1, 1980 to April 30, 1981. On June 24, 1987, petitioners' counsel filed a reply denying the allegations of fraudulent conduct by the corporate petitioner. In December, 1987, respondent attempted informal discovery of information pertaining to items on the statutory notice. Petitioners did not provide the information sought. On January 23, 1988 respondent served a formal request for admissions of 48 items, and on February 24, 1988, petitioners' counsel Larry Kars served respondent with petitioners' response. Of the 48 items, petitioners' counsel admitted 26, denied 15, and partially admitted or objected to the remainder. The following were among the items admitted: 14. $ 31,524 of unreported Om Prakash MD PC corporate funds were deposited into Dr. Prakash's personal accounts during the period May 1, 1979 to April 30, 1980. * * *
16. $ 10,861 of unreported Om Prakash MD PC corporate funds were deposited *114 into Dr. Prakash's personal accounts during the period May 1, 1980 to April 30, 1981. * * * 23. Petitioner Om Prakash MD PC's taxable income for the fiscal year ended April 30, 1980 was $ 51,513.50. 24. Petitioner OM Prakash MD PC's taxable income for the fiscal year ended April 30, 1981 was $ 69,269.00. 25. Petitioner Om Prakash MD PC omitted from its income tax return for the fiscal year ended April 30, 1980 taxable income of $ 38,674.00. 26. Petitioner Om Prakash MD PC omitted from its income tax return for the fiscal year ended April 30, 1981 taxable income of $ 25,267.00. * * * 38. Dr. Prakash did not bring into the United States any monies from India in any of the taxable years 1980, 1981, 1982. The figures used in admissions 14, 16, and 23 through 26 also appear on the statutory notice issued to the corporate petitioner, which reflects adjustments conceded on Form 870. The following items were among those denied in petitioners' Response to Respondent's Request for Admissions: 7. At times Dr. Prakash would remove funds from petitioner Om Prakash MD PC's gross receipts before depositing such receipts into petitioner Om Prakash MD PC's corporate bank *115 accounts. 8. At times Dr. Prakash would remove funds from petitioner OM Prakash MD PC's gross receipts before recording such receipts in petitioner Om Prakash MD PC's books of account. 9. At times Dr. Prakash would deposit petitioner Om Prakash MD PC's gross receipts in his personal bank account rather than petitioner Om Prakash MD PC's corporate bank account. [2]
* * * 20. All of the deposits made by Dr. Prakash into his personal accounts during the taxable years 1978 through 1983 inclusive were from taxable income and none of the sums deposited were from nontaxable sources. 21. Dr. Prakash did not receive any nontaxable or excludable income, receipts, cash or other assets in any of the taxable years 1978 to 1983 inclusive. 22. Dr. Prakash did not receive any gifts, inheritances, legacies, or devises in any of the taxable years 1978 to 1983 inclusive. During the winter of 1988, respondent sought additional information through interrogatories and requests for documents. Respondent sought and obtained an order to compel production of *112 documents dated March 1, 1988 and an *116 order to compel responses to interrogatories dated March 2, 1988. Respondent withdrew these motions on April 4, 1988 when petitioners provided most of the information sought. On July 14, 1988, representatives of respondent and petitioners held a stipulation conference. Petitioners' admissions were included among the proposed stipulated facts. No agreement was reached. In September, 1988, respondent's counsel told petitioners' counsel Larry Kars that she was considering filing an amendment to answer that would rely on the analysis of bank deposits made at the time of the examination to determine additional deficiencies on petitioner's 1979, 1980, and 1981 returns. By December, negotiations had come to a standstill and petitioners informed respondent that they would not concede any deficiencies. On January 23, 1989, respondent moved to amend the answer, and on February 7, 1989, the motion was granted. In the amended answer respondent asserted additional deficiencies arising from $ 27,821 of unreported income in 1979, $ 3,703 in 1980, and $ 48,861 in 1981. The additional deficiencies asserted for 1979 and 1980 total $ 31,524, the amount the corporate petitioner agreed was taxable *117 income of the corporation for the year ending April 30, 1980, per form 870. The additional deficiency asserted for 1981 exceeds by $ 38,000 the amount the corporate petitioner agreed was taxable income of the corporation for the year ending April 30, 1981. Respondent based the assertion of additional deficiencies on the bank-deposits analysis, claiming it showed that deposits exceeded reported income and non-taxable transfers to petitioner's individual accounts by the amounts asserted. Respondent also alleged fraud on the part of petitioner individually. On February 16, 1989, the parties met for a second stipulation conference but again failed to agree. On March 9, 1989, petitioners' counsel Larry Kars filed a motion to withdraw as counsel for petitioners, giving as a reason the possibility that he might have to testify at the trial of the case. Petitioners' reply to the amendment to answer, filed on March 24, 1989, denied all allegations of fraud and asserted that "if gross receipts were deposited in Dr. Prakash's personal accounts rather than Om Prakash M.D., P.C.'s accounts, this action was the result of error by the bank." Petitioners also affirmatively stated: Pursuant *118 to [a] partial settlement agreement, the corporate petitioner agreed to pay taxes on $ 31,524 of unreported income for the period May 1, 1979 through April 30, 1980 . . . [and] on $ 10,861 of unreported income for the period May 1, 1980 through April 30, 1981. * * * Under the proposed partial settlement, the corporation was charged with the alleged unreported income for the years set forth in the Notice of Deficiency, while Dr. Prakash was not. This negotiated disposition of the allegedly unreported income was the result of a bargained for exchange. * * * Petitioner Om Prakash, M.D., P.C. did not receive the income claimed by Respondent not to have been reported on its returns for these years. On March 24, 1989, petitioners filed the motion to withdraw admissions that is now before the Court. This motion does not allege that all admissions are erroneous. Instead, it alleges that respondent reneged on a "carefully constructed compromise," and states that as a result, "it is Petitioners' intention to vigorously contest Respondent's position that Petitioners omitted income from either the corporate Petitioner's return or that of the individual petitioner during the periods *119 in question." Petitioners also claim that there were "numerous other sources and explanations of deposits such as deposit of dividends, loan repayments, [and] the transfer of money from relatives to Dr. Prakash from India," none of which have been acknowledged by respondent. Additionally, petitioner has submitted an affidavit dated March 15, 1989 stating: I had never seen [the response to the request for admissions] prior to [February 20, 1989], nor ever had it even been discussed with me by Mr. Kars. Mr. Kars['] responses contained many inaccuracies. For example, he admits, on my behalf, that I never received any monies from my native country of India during the period before the Tax Court. This is simply untrue. I did receive monies from India during this period. In a similar vein, an affidavit by Larry Kars dated March 14, 1989 states: I also made certain admissions as to certain allegations which appear to have no relevance to the litigation as it was [previously] structured. * * * For example, I admitted that Dr. Prakash did not receive any monies from India during the period in question. Since the Notice of Deficiency did not allege that Dr. Prakash received *120 unreported income, I made these admissions without consulting Dr. Prakash in order to facilitate the stipulation process. OPINION Requests for admissions serve the interests of litigation by eliminating the necessity of formally proving essentially uncontroverted facts. The resulting savings in trial time benefit both litigants and the court system. Pearsall v. Commissioner, 62 T.C. 94 (1974). *113 These benefits would be lost if parties were free to withdraw admissions that their opponents had properly obtained in an effort to advance litigation. Morrison v. Commissioner, 81 T.C. 644, 650 (1983). Rule 90, Requests for Admission, is virtually identical to Rule 36(b), Federal Rules of Civil Procedure, from which it was derived. Morrison v. Commissioner, supra. The 1970 Advisory Committee's Notes to Rule 36(b) state: "Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." *121 Rule 90(f) provides that any matter admitted is conclusively established unless the Court on motion permits withdrawal or modification of the admission. Withdrawal or modification of an admission may be permitted when the presentation of the merits of the case will be advanced thereby, and the party who obtained the admission fails to satisfy the court that the withdrawal or modification will prejudice him in prosecuting his case or defense on the merits. The presentation of the merits of the present case would not be advanced by a withdrawal of these admissions. Petitioners expressly have denied fraudulent conduct on the part of the corporate petitioner and petitioner. They have denied that all deposits made by petitioner to his personal accounts during the years 1978 through 1983 were from taxable sources, although they have admitted that petitioner did not bring into the United States any monies from India during those years. They have also denied that petitioner intentionally deposited unreported corporate funds into his own accounts. They have admitted only that unreported corporate funds "were deposited" into petitioner's accounts. Petitioners made no admissions concerning *122 loans from the corporate petitioner to petitioner. Petitioners will have ample opportunity to litigate the issues here regardless of whether the admissions are withdrawn. To establish that the presentation of the merits of the case will be subserved by withdrawal of admissions, the movant must show facts that tend to establish that an admission was erroneous. Chapoteau v. Commissioner, T.C. Memo. 1989-37; see also Kramer v. Commissioner, 89 T.C. 1081, 1085 (1987). The bare assertion that admissions will be refuted is insufficient; the movant must demonstrate that a trial would serve the presentation of competing evidence. Chapoteau v. Commissioner, supra.
Petitioners have not convinced us that evidence will be introduced tending to refute their admissions. Petitioner had the opportunity in his motion and at the hearing to introduce credible evidence of non-taxable transfers to his accounts, in particular of any monies from India received during the years at issue. All he offered was his own affidavit containing the self-serving *123 assertion that he received such monies. This unsupported assertion is unconvincing. Chapoteau v. Commissioner, supra.Petitioners also argue that if incorrect deposits occurred, it was through errors committed by petitioners' banks over a period of more than two years. They do not offer any evidence that such errors occurred. While we are reluctant to burden petitioners with admissions which they claim were unauthorized, we cannot avoid doing so unless they offer some credible evidence that the admissions were untrue. Petitioners rely heavily on the Heller report, in particular on Heller's comment that some of his predecessor's adjustments appeared to have been "arbitrarily made." The clear import of the Heller report, however, is that by the close of the examination Heller had corrected whatever "arbitrary" adjustments the previous agent may have made. In any event, mere reference to Heller's criticism of his predecessor does not constitute evidence that transfers to petitioner's accounts were nontaxable. We conclude that petitioners are unable to offer evidence *124 tending to refute their admissions, so that determination of the merits of this case would not be subserved by withdrawal of the admissions. Rule 90(f) requires that withdrawal or modification of admissions be denied if such action would prejudice the party who procured the admission. Here, the circumstances show that respondent would be prejudiced by the withdrawal of the admissions. In Morrison v. Commissioner, supra at 649, the Court held that a party would be prejudiced by withdrawal of admissions if he relied on them and would suffer delay, added expense, and additional effort because of the withdrawal. See also Dahlstrom v. Commissioner, 85 T.C. 812 (1985). In the present case, respondent has relied in good faith on the binding effect of petitioners' admissions to prepare stipulation agreements and an amendment to answer. Some of this work would be wasted if the Court were to permit the admissions to be withdrawn. Furthermore, we are satisfied that withdrawal of the admissions would cause respondent to suffer delay, added expense, and additional *125 effort in proving the matters admitted, in particular where respondent must prove a negative, such as that petitioner received no money from India. Petitioners contend that the Court should exercise its discretion and permit the withdrawal of admissions in the interest of fairness. They explain that petitioners' counsel, Larry Kars, made admissions to allegations of unreported income because he believed that the *114 items had been conclusively disposed of pursuant to a negotiated agreement, and that although he lacked knowledge of the accuracy of the admissions, he made them in a good faith effort to further the stipulation process. The rules of this Court do not authorize the course of conduct that Larry Kars allegedly followed. Rule 90(c) provides that if a requested admission is untrue or is objectionable in some way, the responding party may object, deny, or state that it is impossible to admit or deny the truth of the matter, giving a statement of the reasons for the denial or objection. Similarly, if a requested admission would be true if qualified in some way, the responding party must so state and provide the necessary qualification. Larry Kars denied, objected to, and *126 qualified many items in respondent's request for admissions. We are convinced that he understood the importance of responding accurately to requests for admissions and would not have admitted items without believing them to be true. We note that although Larry Kars was present at the hearing, petitioners did not call him to testify, so that it was not possible to ask him why an experienced litigator would believe that the stipulation process would be aided by his admitting to matters that he did not know to be true. We consider that Larry Kars' explanation in his affidavit that he admitted to matters without consulting his client and that he took such action for the purpose of aiding the stipulation process is unconvincing. Petitioners' "fairness" argument is in essence an argument that respondent should be equitably estopped from asserting new deficiencies on the basis of admissions which Larry Kars claims were obtained when respondent's counsel "trick[ed] me into making admissions * * * without informing me of [her] intentions." The prerequisites to the application of equitable estoppel are not present here. *127 The doctrine of equitable estoppel is applied against the Government "with utmost caution and restraint." Boulez v. Commissioner, 810 F.2d 209, 218 (D.C. Cir. 1987), affg. 76 T.C. 209 (1981), cert. denied 484 U.S. 896 (1987) (quoting Estate of Emerson v. Commissioner, 67 T.C. 612, 616 (1977)); Kronish v. Commissioner, 90 T.C. 684, 695 (1988). Estoppel may be invoked against the Commissioner where a taxpayer would otherwise sustain "such profound and unconscionable injury in reliance on the Commissioner's action as to require, in accordance with any sense of justice and fair play, that the Commissioner not be allowed to inflict the injury." Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), affg. 32 T.C. 998 (1959) and revg. 32 T.C. 1017 (1959). Among the conditions that must be satisfied before the doctrine of equitable estoppel may be invoked against a particular party are: (1) the existence of a false representation or wrongful, misleading silence by *128 that party; (2) ignorance of the true facts on the part of the other party; (3) reasonable reliance by the other party on that false representation or wrongful, misleading silence; (4) error in a statement of fact and not in an opinion or statement of law; and (5) a resulting detriment to the party relying on the false statement or misleading silence. Kronish v. Commissioner, supra at 695; Estate of Emerson v. Commissioner, supra at 617-619. The elements of equitable estoppel have not been satisfied in this case. First, we do not find that respondent's agent made false representations to petitioner that no additional deficiencies would be determined on the returns under examination. The only evidence petitioners offer of the "negotiated settlement" that Larry Kars allegedly relied on is the Heller report. In the report, Heller states that after the prior agent's proposed adjustments were cleared up -- a summary of final adjustments was prepared and shown under the supplementary workpapers caption. The related shareholder's return Om Prakash was charged with income from the above corporation based on analysis of various accounts. The *129 related shareholder was allowed the option of redepositing such amounts back into the corporate account which he did thus avoiding his being charged on his personal tax return. This language does not indicate that respondent's agent represented to petitioner that the "option" he allowed petitioner was a binding agreement that respondent would determine no additional deficiencies. Section 7121 sets forth the exclusive procedure under which a final closing agreement as to the tax liability of any person can be executed. Estate of Meyer v. Commissioner, 58 T.C. 69, 70 (1972). See also Botany Worsted Mills v. United States, 278 U.S. 282, 288 (1929). Similarly, section 7122 sets forth the exclusive procedure by which a taxpayer may enter into a compromise agreement with respondent. Botany Worsted Mills v. United States, supra.Both closing agreements and compromise agreements are required to be in writing and to be accepted by the Secretary. Secs. 301.7121-1 and 301.7122-1, Proced. & Admin. Regs.; secs. 601.203(a) and 601.203(b), *130 Statement of Procedural Rules. Petitioners have not shown that an agreement that meets these requirements was entered into with the Secretary. Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, which the corporate petitioner signed, *115 does not constitute a binding closing agreement under section 7121 or a binding compromise under section 7122. Form 870 is merely a waiver by the corporate petitioner of the statutory notice requirements imposed upon respondent by section 6213(a). Consolidated Freightways, Inc. v. United States, 22 Ct. Cl. 443, 620 F.2d 862, 868 (1980). The form expressly states that respondent is not prevented from later determining that additional tax is owed by the corporate petitioner. It has no bearing on the liabilities of petitioner individually. Secondly, petitioners have failed to show that their alleged reliance on the representations of respondent's agent, whether or not the representations are characterized as a "binding agreement," was reasonable. *131 Persons who enter into arrangements with agents of the Government must ascertain that such agents stay within the bounds of their authority. Boulez v. Commissioner, supra.Petitioners have presented no evidence that agent Heller had authority to enter into a binding agreement as to petitioner's tax liability. Furthermore, we do not believe that Larry Kars, a former attorney with respondent's District Counsel, was unaware that Heller lacked authority to bind respondent. Even if he had been unaware of Heller's lack of authority, his and petitioners' alleged reliance on Heller's representations would have resulted from a misunderstanding of the legal effect of the representations, not on ignorance of the true facts of the case. Respondent is not estopped by a taxpayer's mistake as to the legal effect of respondent's representations. Service Bolt & Nut Co. Trust v. Commissioner, 78 T.C. 812, 822 (1982), affd. 724 F.2d 519 (6th Cir. 1983). Finally, we are not convinced that petitioners have suffered an injury sufficiently serious to estop respondent from determining new deficiencies. *132 Petitioners had the opportunity at the hearing to show that the matters admitted are untrue, and they offered no credible evidence that such is the case. Petitioners also contend that they have been unfairly surprised by respondent's alleged switch to the bank-deposits method of proof. They argue further that the analysis was arbitrary and that it was invalidated by respondent's failure to determine opening cash balances. Respondent used a bank-deposits analysis at the examination level and repeatedly referred to the analysis in his original answer and during discovery. We fail to understand how petitioners can claim that they were surprised by this method of proof. Moreover, their assertions of surprise do not convince us that they should be permitted to withdraw their admissions. Petitioners' objections to specific details of the analysis go to the merits of the case and need not be decided at this time. Petitioners' motion to withdraw admissions is denied. Respondent has moved that the Court strike the allegation in petitioners' motion that respondent "reneged" on a "carefully constructed compromise." We find that no binding agreement as to petitioners' tax liabilities *133 had been reached. We consider it unnecessary to strike petitioners' allegation. Additionally, respondent has moved that the Court strike allegations in Larry Kars' affidavit that he was tricked into making admissions. Petitioners have failed to convince us that the conduct of respondent's counsel was improper, and we have declined to take the action urged by petitioners. Accordingly, we see no need to grant respondent's motion to strike the allegations that petitioners' former counsel chose to make in his affidavit. Respondent's motion to strike will be denied. An appropriate order will be issued. Footnotes
1. This case was assigned pursuant to section 7443A and Rule 180 et seq. All section references are to the Internal Revenue Code, as amended and in effect in the years in question, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The response to this item was "Deny i[n] so far as Dr. Prakash making the deposits."↩