# United States Tax Court

T.C. Memo. 2023-124

ABDUL KHALIQ MUSTAFA MUHAMMAD,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 7103-21.                        Filed October 17, 2023.

————————

Abdul Khaliq Mustafa Muhammad, pro se.

*Amanda K. Bartmann* and *Stephen C. Welker*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*: With respect to petitioner's Federal income tax for tax years 2017 and 2018, the Internal Revenue Service (IRS or respondent) determined deficiencies of $13,062 and $12,351 and civil fraud penalties of $9,797 and $9,263, respectively. The deficiencies stem from unreported gross income and the disallowance of deductions.

In his Answer filed July 9, 2021, respondent made affirmative allegations regarding petitioner's alleged unreported income and fraudulent conduct. We directed petitioner to reply to these allegations, but he failed to do so. We then entered an Order deeming respondent's affirmative allegations admitted. *See* Rule 37(c).[1] Respondent has filed a Motion for Partial Summary Judgment contending that the deemed admissions establish that he is entitled to judgment as a matter of law with

————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] respect to the unreported income and the civil fraud penalties. We will grant the Motion insofar as it pertains to the unreported income.

## *Background*

The following facts are based on the parties' pleadings and the Declarations and Exhibits attached to respondent's Motion. *See* Rule 121(c). Petitioner resided in Virginia when his Petition was timely filed.

Petitioner has been an employee of the IRS since 2008. He previously worked as a tax return preparer. He holds five educational degrees, including a master's in business administration and a Juris Doctor with an alleged specialty in international taxation.

Petitioner included with his 2017 and 2018 Federal income tax returns Schedules C, Profit or Loss From Business. He conducted that business under the name "El Virtuoso Enterprise." He described it as a "professional service business."

Petitioner claimed numerous deductions in connection with "El Virtuoso Enterprise," including substantial deductions for home office expenses. For 2017 and 2018 he reported gross receipts of $6,000 and $4,500, respectively, and net losses of $36,515 and $40,124, respectively. His Schedules C for these years reflected his prior practice of reporting gross receipts in round-dollar amounts and expenses that vastly exceeded such receipts. For 2016 he had reported gross receipts of $3,500 and a net loss of $28,429. He has reported a Schedule C loss on every return he has filed since 2012.

The IRS selected petitioner's 2017 and 2018 returns for examination. When he declined to provide books and records for his Schedule C business, the revenue agent (RA) issued summonses to his bank in order to perform a bank deposits analysis. On the basis of that analysis, the RA determined that petitioner had unreported Schedule C gross receipts of $8,347 and $7,231 for 2017 and 2018, respectively.

At the conclusion of the examination the IRS issued petitioner a timely notice of deficiency, determining the deficiencies and fraud penalties set forth above. He timely petitioned this Court, assigning as errors the treatment of his bank deposits as taxable income, the disallowance of his claimed deductions, and the determination of penalties for civil fraud.

[*3]    On July 9, 2021, respondent timely filed an Answer that made 24 affirmative allegations.  These included allegations that the RA, employing the bank deposits analysis, had arrived at the correct amounts of unreported taxable deposits for 2017 and 2018.  Specifically, respondent alleged as follows:

> Based on a bank deposits analysis properly omitting nontaxable amounts (transfers etc.), and offering petitioner ample opportunity to explain unreported amounts, during taxable years 2017 and 2018 petitioner's net, unreported taxable deposits into bank accounts were as follows: Bank of America (ending in 6546) 2017: $8,347 . . . 2018: $7,231.

Respondent also made several allegations in support of his determination that petitioner had committed civil fraud.  These included allegations that petitioner was uncooperative with the RA during the examination; that he failed to supply accurate books and records of his Schedule C business; and that he was fully aware of the requirement that he keep such books and records.  Finally, respondent alleged that, if petitioner is not liable for the fraud penalty, he is liable in the alternative for an accuracy-related underpayment penalty under section 6662(a).

Petitioner did not deny (or otherwise reply to) these affirmative allegations within 45 days.  *See* Rule 37(a).  On October 8, 2021, respondent timely filed a Motion for Entry of an Order that the Undenied Allegations Be Deemed Admitted.  *See* Rule 37(c).  By Order served October 14, 2021, we directed petitioner to file a reply to that Motion by November 8, 2021.  He failed to do so by that date or subsequently.  On January 10, 2022, we entered an Order granting respondent's Motion and ruling that the undenied allegations set forth in the Answer "are deemed admitted for the purposes of this case."

On October 13, 2022, respondent filed a Motion for Partial Summary Judgment, contending that he is entitled to judgment as a matter of law with respect to the issues of unreported income and civil fraud.  On November 15, 2022, petitioner filed a document he characterized as a "Combined Motion to Deny Partial Summary Jugement [sic] and to Vacate Admissions of Income and Underpayment of Tax Due to Fraud."  We filed this document as a Motion to Vacate (docket entry No. 25) and a Response to Motion for Partial Summary Judgment (docket entry No. 26).

4

*Discussion*

I.      *Motion to Vacate the Rule 37(c) Order*

The standard for granting a motion to vacate an order entered under Rule 37(c) is the same as that for granting a motion to withdraw or modify a deemed admission under Rule 90(f). *See New v. Commissioner*, 92 T.C. 1146, 1148–49 (1989). To prevail on such a motion the moving party must establish (1) that the merits of his case will be advanced by withdrawal of the admission and (2) that no prejudice will result to the opposing party. *See id.* at 1149. The first condition requires the movant to adduce facts that tend to refute the admissions. *See id.* at 1149–50. "The bare assertion that admissions will be refuted is insufficient; the movant must demonstrate that a trial would serve the presentation of competing evidence." *Om Prakash, M.D., P.C. v. Commissioner*, T.C. Memo. 1990-106, 59 T.C.M. (CCH) 5, 8.

In his Motion petitioner offers two excuses for his failure to reply to respondent's affirmative allegations. He first asserts that he did not know that respondent had filed an Answer, alleging that he was traveling outside of the United States and "did not have access to email or regular deliverable mail." The travel documents he supplied show that he left the United States on July 16, 2021, one week *after* the Answer was filed, and that he returned to the United States on August 18, 2021, seven weeks before respondent filed his Rule 37(a) Motion. Petitioner receives electronic service of all filings in this case. We are unconvinced by his assertion that he was unaware that respondent had filed the Answer.

Second, petitioner alleges that a car accident and resulting injury he suffered on August 21, 2021, prevented him from complying with our October 14, 2021, Order directing him to file a reply. To substantiate those allegations he supplied a letter from his automobile insurance company and invoices for rotator cuff surgery and physical therapy sessions. But he has not shown that his injury was so debilitating that it prevented him from complying with our Order or from moving for an extension of time in which to comply. The fact that he participated in a pre-trial conference with respondent on October 22, 2021, suggests that he was well enough to file a reply by our November 8, 2021, deadline. In any event, we afforded him an additional two months before entering our Rule 37(c) Order.

5

**[\*5]**   On the merits petitioner challenges respondent's affirmative allegations that the RA, employing the bank deposits analysis, arrived at the correct amounts of unreported taxable deposits for 2017 and 2018. Petitioner asserts that certain bank deposits were nontaxable because they reflected (1) an insurance payment for a casualty loss; (2) cash "already withdrawn previously from [his bank] account and [later] redeposited to cover expenditures"; and/or (3) a cash deposit sourced from "a loan from [his] Thrift Savings Plan." But he has supplied no documentary evidence (e.g., insurance records, bank account records, or loan documents) to support any of these allegations. And he has not averred under penalty of perjury that any such evidence exists. He has accordingly failed to "demonstrate that a trial would serve the presentation of competing evidence." *Om Prakash, M.D., P.C.*, 59 T.C.M. (CCH) at 8.

Petitioner does not seriously dispute respondent's affirmative allegations relating to possible "badges of fraud," e.g., that he was uncooperative with the RA during the examination, that he failed to supply complete books and records of his Schedule C business, or that (as an IRS employee and former return preparer) he was aware of the requirement that he keep books and records. Rather, he alleges that he did keep books and records, but that he suffered three separate instances of water damage (in 2015, 2017, and 2018), resulting in "computer crashes" that caused him to "los[e] all data storage."

Petitioner did not reply to respondent's affirmative allegations despite being given ample opportunity to do so. And in his Motion papers he failed to produce facts that would tend to refute respondent's allegations regarding unreported income and possible badges of fraud. *See New*, 92 T.C. at 1148–50; *Om Prakash, M.D., P.C.*, 59 T.C.M. (CCH) at 8. We will accordingly deny his Motion to Vacate.

II.   *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520.

**[\*6]**   Facts deemed admitted under Rule 37(c) are considered conclusively established and may be relied on by the Commissioner even when he bears the burden of proof. *See Marshall v. Commissioner*, 85 T.C. 267, 272–73 (1985); *Baptiste v. Commissioner*, T.C. Memo. 1992-198, 63 T.C.M. (CCH) 2649, 2649, *aff'd*, 29 F.3d 1533 (11th Cir. 1994). Where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleadings" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

### A.   *Gross Receipts*

A taxpayer must maintain books and records establishing the amount of his gross income. *See* § 6001. When a taxpayer does not keep accurate books and records, the Commissioner may reconstruct his income "under such method as, in the opinion of the Secretary, does clearly reflect income." § 446(b); *see Petzoldt v. Commissioner*, 92 T.C. 661, 693 (1989). Such reconstruction "need only be reasonable in light of all surrounding facts and circumstances." *Petzoldt*, 92 T.C. at 687. "When a taxpayer keeps no books or records, has large bank deposits, and offers no plausible explanation of such deposits, the Commissioner is not arbitrary or capricious in resorting to the bank deposit method for computing income." *Estate of Mason v. Commissioner*, 64 T.C. 651, 657 (1975), *aff'd*, 566 F.2d 2 (6th Cir. 1977).

The bank deposits method starts with the presumption that all money deposited into a taxpayer's bank account during a given period constitutes taxable income. *Price v. United States*, 335 F.2d 671, 677 (5th Cir. 1964); *Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). This presumption is rebutted to the extent the deposits are shown to include nontaxable amounts, and "the Government must take into account any non-taxable source . . . of which it has knowledge." *Price*, 335 F.2d at 677; *DiLeo v. Commissioner*, 96 T.C. 858, 868 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992). After the IRS reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the IRS's implementation of the bank deposits method was unfair or inaccurate. *See Clayton v. Commissioner*, 102 T.C. 632, 645–46 (1994); *DiLeo*, 96 T.C. at 871–72.

Employing the bank deposits method, the RA determined that petitioner received unreported gross receipts of $8,347 and $7,231 for 2017 and 2018, respectively. In the Answer respondent alleged that "during taxable years 2017 and 2018 petitioner's net, unreported taxable

[*7] deposits into bank accounts were as follows:  Bank of America (ending in 6546) 2017: $8,347 . . . 2018: $7,231."  When petitioner did not reply, the Court entered its Order deeming this allegation admitted.  *See* Rule 37(c).  This deemed admission alone suffices to establish that no genuine dispute exists as to the issue of unreported gross income.  *See Marshall*, 85 T.C. at 272–73.

Assuming arguendo that petitioner had timely denied the affirmative allegations, he has failed to produce evidence that could create a genuine dispute over whether he received unreported income.  *See* Rule 121(d) (requiring nonmovant to set forth specific facts supported by evidence); *Vallone v. Commissioner*, 88 T.C. 794, 801 (1987).  He contends that some bank deposits were attributable to an insurance payout, redeposited cash, or a Thrift Savings Plan loan.  But he has offered no evidence, such as bank records, insurance records, or loan documents, to substantiate these assertions.  We will thus grant summary judgment for respondent on the issue of petitioner's unreported gross income.

B.    *Fraud*

Section 6663(a) imposes a penalty of 75% on any portion of an underpayment of tax attributable to fraud.  Fraud is intentional wrongdoing designed to evade tax believed to be owing.  *Neely v. Commissioner*, 116 T.C. 79, 86 (2001).  The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  *Estate of Pittard v. Commissioner*, 69 T.C. 391, 400 (1977).

Fraud is not to be presumed or based upon mere suspicion.  *Petzoldt*, 92 T.C. at 700.  Respondent has the burden of proving fraud, and that burden must be carried by clear and convincing evidence.  *See* § 7454(a); Rule 142(b).  But because direct proof of a taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence.  *Petzoldt*, 92 T.C. at 699.  The Commissioner satisfies his burden of proof by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes."  *Parks v. Commissioner*, 94 T.C. 654, 661 (1990).  The taxpayer's entire course of conduct may be examined to establish the requisite intent, and an intent to mislead may be inferred from a pattern of conduct.  *Webb v. Commissioner*, 394 F.2d 366, 379 (5th Cir. 1968), *aff'g* T.C. Memo. 1966-81; *Stone v. Commissioner*, 56 T.C. 213, 224 (1971).

**[\*8]** Circumstances that may indicate fraudulent intent, often called "badges of fraud," include but are not limited to (1) understating income, (2) keeping inadequate records, (3) giving implausible or inconsistent explanations of behavior, (4) concealing income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) supplying incomplete or misleading information to a tax return preparer, (8) providing testimony that lacks credibility, (9) filing false documents (including false tax returns), (10) failing to file tax returns, and (11) dealing in cash. *See Schiff v. United States*, 919 F.2d 830, 833 (2d Cir. 1990); *Bradford v. Commissioner*, 796 F.2d 303, 307–08 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-601; *Parks*, 94 T.C. at 664–65; *Recklitis v. Commissioner*, 91 T.C. 874, 910 (1988); *Morse v. Commissioner*, T.C. Memo. 2003-332, 86 T.C.M. (CCH) 673, 675, *aff'd*, 419 F.3d 829 (8th Cir. 2005). Respondent may rely on facts deemed admitted in an effort to discharge his burden of proof. *See Marshall*, 85 T.C. at 272–73. But summary judgment on the ultimate issue of fraud is generally inappropriate when issues of motive and intent are material. *See Espinoza v. Commissioner*, 78 T.C. 412, 417 (1982).

We have deemed petitioner to have admitted certain affirmative allegations relating to possible "badges of fraud," e.g., that he was uncooperative with the RA during the examination, that he failed to supply accurate books and records of his Schedule C business, and that (as an IRS employee and former return preparer) he was aware of the requirement that he keep books and records. However, we do not think that these admissions alone are sufficient to satisfy respondent's burden of proving fraud by clear and convincing evidence. Petitioner alleges (for example) that he was unable to supply books and records to the RA because those records had been destroyed by water damage. Such a fact, if true, could tend to support petitioner's contention that he lacked the subjective intent to commit fraud. He will be free at trial to offer evidence substantiating the water damage allegation and other allegations bearing upon his intent.

Because we are not satisfied that the facts deemed admitted establish by clear and convincing evidence that petitioner intended to evade payment of tax, we will deny summary judgment with respect to the fraud penalties. Those penalties remain for trial, as do respondent's

**[\*9]** disallowance of Schedule C and other deductions and his alternative assertion of accuracy-related penalties under section 6662(a).[2]

To reflect the foregoing,

*Appropriate orders will be issued.*

---

[2] Petitioner makes various allegations concerning the RA's conduct during the examination and appears to argue that this behavior invalidates the notice of deficiency. We disagree. Proceedings in the Tax Court are conducted de novo, and we will generally not look behind a notice of deficiency to examine the Commissioner's motives or the administrative policies and procedures involved in making his determinations. *See Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974). A narrow exception to this rule applies where a taxpayer proffers substantial evidence of unconstitutional conduct on the part of an IRS official. *See id.* at 328. Petitioner has offered no plausible evidence along those lines.