116 T.C. No. 8

UNITED STATES TAX COURT

U.R. NEELY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14936-98.                    Filed February 13, 2001.


     P contends that R is barred from assessing
additional employment taxes because the notice of
determination concerning worker classification was
issued after the expiration of the general 3-year
period of limitations under sec. 6501(a), I.R.C.  R
contends that the period of limitations on assessment
is indefinitely extended pursuant to sec. 6501(c)(1),
I.R.C., by reason of P's fraud in the filing of various
employment tax returns.

     <u>Held</u>:  The elements of fraud in the employment tax
context are the same as those in the income, estate,
and gift tax contexts.

     <u>Held</u>, <u>further</u>, P did not commit fraud for purposes
of sec. 6501(c)(1), I.R.C.  Accordingly, R is barred by
the statute of limitations from assessing additional
employment taxes for the taxable periods in issue.

Kirk A. McCarville, for petitioner.

John W. Duncan, for respondent.


VASQUEZ, Judge:  Respondent issued to petitioner a notice of determination concerning worker classification.  Petitioner contends that respondent is barred from assessing additional employment taxes for the taxable periods in issue on the grounds that the notice of determination was issued after the expiration of the general 3-year period of limitations under section 6501(a).[1]  Respondent argues that the period of limitations on assessment remains open pursuant to section 6501(c) by reason of petitioner's fraudulent conduct.

In a previous opinion, we addressed whether this Court possesses jurisdiction to address issues pertaining to the period of limitations on assessment in the context of a case brought under section 7436.  We resolved that inquiry in the affirmative.  See Neely v. Commissioner, 115 T.C. 287 (2000).  Accordingly, we now address whether the period of limitations on assessment expired prior to the issuance of respondent's notice of determination.

---

[1]  All section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Phoenix, Arizona, at the time he filed his petition in this case.

Petitioner's Background

Petitioner graduated from high school in 1972 and immediately thereafter began working in the air-conditioning business by installing ductwork for his father. In 1976, after attending one semester of college, petitioner went to work for Geottle's Metal Products (Geottle). Petitioner's initial responsibilities at Geottle included installing sheet metal and air-conditioning units. He later worked his way up into the estimating department, where he bid jobs on behalf of his employer.

In 1985, petitioner left Geottle and formed his own business called the A/C Co. (the company).[2] The company specialized in the installation of air-conditioning equipment and associated ductwork, and the company's principal place of business was located in Mesa, Arizona. The activities of the company during 1992 constitute the focus of respondent's determination.

---

[2] The company was initially operated as a partnership between petitioner and an associate, whom petitioner later bought out. At all times during the 1992 tax year, the company was operated by petitioner as a sole proprietorship.

Activities of the Company During 1992

The company experienced a busy year in 1992. Petitioner had approximately 100 jobs, with each job lasting anywhere from 6 weeks to 6 months. While petitioner typically maintained a workforce of approximately 20 to 25 people, during 1992 that figure increased to 40. Most of the employees served in the field as installers. Petitioner, a superintendent, an estimator, and an office manager operated out of the business office.

At some point in 1992, Robert Cook approached petitioner about working at one of his job sites. Mr. Cook, however, conditioned his services upon being paid in cash. Due to his need for labor, petitioner agreed, but only after informing Mr. Cook that he would be issued a Form 1099 with respect to the cash payments made to him.

William Baker and Dennis Page were hired by petitioner under similar circumstances. Petitioner did not meet with these individuals; rather, he hired them on the recommendation of his job foremen. Mr. Baker and Mr. Page each insisted on being paid in cash for their services, a condition to which petitioner again agreed on the understanding that Forms 1099 would be issued with regard to the payments.

Petitioner's arrangements with Messrs. Cook, Baker, and Page (collectively, the workers) constitute the only instance in which petitioner paid a worker in cash for services rendered. During

less busy times, petitioner rejected requests from individuals to be paid in cash.

Petitioner's Internal Accountant

Ann Gerber (formerly Ann Melcher) served as the company's office manager from 1986 until the company was sold in 1994. Ms. Gerber was responsible for all monetary aspects of the business. In addition to collecting receivables and paying expenses, Ms. Gerber maintained the company's books and processed the payroll. As part of her payroll obligations, Ms. Gerber calculated the proper amount of employment taxes[3] to be withheld from each employee's paycheck.

Each time petitioner notified Ms. Gerber that a worker was to be paid in cash, he instructed her that the worker was to be issued a Form 1099 to reflect the payment. Petitioner believed that the issuance of a Form 1099 was sufficient to keep him in compliance with relevant tax laws.

The workers submitted weekly timecards to Ms. Gerber, and she would distribute the appropriate cash payments to them. In order to generate the cash necessary to pay the workers, Ms. Gerber would write a check from the company's account to

---

[3] For convenience, we use the term "employment taxes" to refer to taxes under the Federal Insurance Contributions Act (FICA), secs. 3101-3128, the Federal Unemployment Tax Act (FUTA), secs. 3301-3311, and income tax withholding, secs. 3401-3406. See Henry Randolph Consulting v. Commissioner, 112 T.C. 1, 1 n.1 (1999).

petitioner. The amount of the check included petitioner's weekly $500 draw, plus whatever amounts were owed to the workers. After depositing petitioner's $500 draw to his individual account, Ms. Gerber received the remainder of the check proceeds in cash. She in turn distributed the cash to the workers in the amounts they were owed. As a result of this practice, the amounts paid to the workers were reflected on the company's books as distributions to petitioner. Petitioner was not aware that the cash payments to the workers were being accounted for in this manner.

Ms. Gerber withheld no employment taxes from the amounts paid to the workers. In addition, Ms. Gerber did not issue Forms 1099 to the workers, as such was the responsibility of petitioner's outside accountant. Petitioner did not instruct nor suggest to Ms. Gerber that the cash payments were not to be reported to the Internal Revenue Service.

Petitioner's External Accountant

Kenneth Messmer, a certified public accountant, served as petitioner's outside accountant starting in 1986. Mr. Messmer was responsible for preparing petitioner's Form 1040, Individual Income Tax Return (which included the activities of the company on Schedule C, Profit or Loss From Business), and all of the company's required employment tax returns. Additionally, Mr. Messmer prepared the necessary Forms W-2, Wage and Tax Statement, and Forms 1099 pertaining to the company.

Mr. Messmer's contact with Mr. Neely was limited; he instead dealt primarily with Ms. Gerber.  Ms. Gerber coded the checks written on behalf of the company to various expense accounts, and Mr. Messmer prepared the relevant tax returns based on such information.

Petitioner's Employment Tax Returns

Petitioner filed various employment tax returns relating to the operations of the company during 1992.  Below is a summary of the Forms 941, Employer's Quarterly Federal Tax Return, filed on behalf of the company:

| Quarter Ending | Date Filed | Total Wages | Income Tax Withholding[1] | FICA[2] |
|---|---|---|---|---|
| 3/31/92 | 8/4/92 | $70,188 | $6,335 | $10,739 |
| 6/30/92 | 8/4/92 | 70,188 | 6,335 | 10,739 |
| 9/30/92 | 10/31/92 | 113,345 | 10,330 | 17,342 |
| 12/31/92 | 1/31/93 | 113,380 | 9,159 | 17,347 |

[1]  Income Tax Withholding, secs. 3401-3406.
[2]  Federal Insurance Contributions Act, secs. 3101-3128.

With respect to the company's 1992 tax liability under the Federal Unemployment Tax Act, secs. 3301-3311, petitioner filed a Form 940-EZ, Employer's Annual Federal Unemployment (FUTA) Tax Return, on March 1, 1993.  The form reflected total payments to employees of $353,172, total taxable wages of $176,286, and a FUTA tax liability of $1,410.  Petitioner was current in payment of his employment tax obligations listed on the above-described returns.

Over the course of 1992, petitioner's company made cash payments of $19,985 to Mr. Cook, $21,694 to Mr. Baker, and $15,414 to Mr. Page. The payments were not included in the appropriate employment tax returns. Petitioner, however, was not aware in signing the returns that the payments to the workers had been omitted.

Petitioner's Individual Income Tax Return

During the review of his 1992 individual income tax return with Mr. Messmer, petitioner informed Mr. Messmer that he had not received all of the amounts which were reflected on the company accounts as his personal draw. After further investigation, Mr. Messmer became aware that the payments coded as petitioner's personal draw included the cash payments made to the workers. Mr. Messmer therefore made an adjusting entry to petitioner's draw account by subtracting the cash payments to the workers and adding those payments to the labor expense account under cost of goods sold. Petitioner's 1992 individual income tax return was selected for examination in 1995. In the course of the examination, the revenue agent noticed that the cost of goods sold reported by petitioner varied from the figure carried on the company's books by $57,000. Petitioner initially did not know the reason for the discrepancy, but he later informed the revenue agent that the discrepancy was attributable to the cash payments made to the workers.

Petitioner described the workers to the revenue agent as independent contractors.  Petitioner further informed the revenue agent that the workers had provided services to other people and that they reported directly to the appropriate job sites.[4] Petitioner cooperated with the revenue agent in every aspect requested and provided her with all pertinent documents and records.

Petitioner and respondent settled all matters relating to the examination of petitioner's individual income tax return.  As part of the settlement agreement, petitioner stipulated various aspects of the relationship which the workers maintained with the company,[5] and respondent allowed the payments to the workers to be included in the labor component of cost of goods sold.  At this point, petitioner provided respondent with Forms 1099-MISC, Miscellaneous Income, concerning the payments to the workers.

Notice of Determination

On June 11, 1998, respondent mailed to petitioner a Notice of Determination Concerning Worker Classification Under Section 7436 in which respondent determined that (1) the workers were

---

[4]  The revenue agent was equivocal in her recollection that petitioner had described the workers as having submitted bids to him for particular jobs.

[5]  Specifically, petitioner stipulated that (a) the workers were required to comply with petitioner's instructions about when, where, and how their work was to be performed; (b) petitioner had the right to discharge each of the workers; and (c) the workers could have terminated their relationship with petitioner at any time without incurring liability.

employees of the company for purposes of Federal employment taxes under Subtitle C (Employment Taxes and Collection of Income Tax) of the Internal Revenue Code, and (2) petitioner was not entitled to "safe harbor" relief provided by section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2885. Respondent attached to the notice of determination a schedule detailing the proposed additional employment taxes.[6] Respondent also asserted a section 6663 fraud penalty with respect to such additional taxes.

Petitioner filed with the Court a timely petition seeking our review of the notice of determination pursuant to section 7436. The notice was issued after the expiration of the general 3-year period of limitations on assessment as set forth in section 6501(a). No consents extending the period of limitations have been executed.

---

[6] In his petition, petitioner disputed the amounts of the employment taxes and penalties that were set forth on the schedule accompanying the notice of determination. We previously granted respondent's motion to dismiss in part for lack of jurisdiction as to the amounts of employment taxes and related penalties, in keeping with our decision in Henry Randolph Consulting v. Commissioner, 112 T.C. 1 (1999). Subsequent to our granting of respondent's motion, Congress amended sec. 7436(a) to provide the Tax Court with jurisdiction to determine the correct amounts of employment taxes that relate to the Secretary's determination concerning worker classification. See Community Renewal Tax Relief Act of 2000 (CRTRA), Pub. L. 106-554, sec. 314(f), 114 Stat. 2763. This amendment was made retroactive to the effective date of sec. 7436(a). See id. sec. 314(g). Accordingly, we have since vacated our prior order to dismiss in part for lack of jurisdiction as to the amounts of employment taxes relating to respondent's determination concerning worker classification.

## OPINION

The sole matter for determination is whether the period of limitations on assessment expired prior to the issuance of respondent's notice of determination. Petitioner contends that the assessment of any additional employment tax liability is barred by the statute of limitations under section 6501, as the notice of determination was issued after the general 3-year period of limitations provided by section 6501(a). Respondent, on the other hand, contends that the general limitations period under section 6501(a) does not apply in this case. Respondent claims that the employment tax returns at issue were false and fraudulent with an intent to evade tax and that the period of limitations thereby remains open pursuant to section 6501(c)(1).[7] Accordingly, whether respondent's notice of determination was timely issued depends on whether petitioner committed fraud in the filing of the employment tax returns.

This is the first instance in which this Court has been called upon to determine whether a taxpayer committed fraud in the employment tax context. Nonetheless, the determination of fraud for purposes of the period of limitations on assessment

---

[7] Respondent also alleged in his answer that the failure of petitioner to reflect the cash payments to the workers on the appropriate employment tax returns constituted a willful attempt by petitioner to defeat or evade employment taxes, justifying an indefinite extension of the period of limitations pursuant to sec. 6501(c)(2). However, respondent neither argued this point at trial nor raised it in the course of the posttrial briefing. Accordingly, we treat this argument as having been withdrawn.

under section 6501(c)(1) is the same as the determination of fraud for purposes of the penalty under section 6663, see Rhone-Poulenc Surfactants & Specialties v. Commissioner, 114 T.C. 533, 548 (2000), and an extensive body of law exists addressing the fraud penalty in the income, estate, and gift tax contexts. We shall rely on such case law in our analysis below.

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. See Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223; McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). The Commissioner bears the burden of proving fraud and must establish it by clear and convincing evidence. See sec. 7454(a); Rule 142(b). To satisfy the burden of proof, the Commissioner must show that (1) an underpayment in tax exists, and (2) the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes. See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

Petitioner concedes that his failure to include the cash payments made to the workers on the appropriate employment tax returns resulted in an understatement in tax. Accordingly, we focus on whether the understatement was a product of fraudulent intent. As described below, the record in this case does not support a finding that petitioner acted with an intent to conceal, mislead, or otherwise prevent the collection of taxes.

Petitioner testified that he believed the employment tax

returns to be accurate at the time he signed them. He was not aware that the payments to the workers should have been included in the employment tax returns, and, in any event, he was not specifically aware that the payments were not so included. Furthermore, petitioner did not know that the payments to the workers had been coded for accounting purposes as distributions to himself. Petitioner's testimony in this regard was highly credible, and we note that it was corroborated by the testimony of his former office manager and his outside accountant.

Ms. Gerber stated that she had no problems with Mr. Neely in terms of his honesty with her and that he never asked her to do anything that made her uncomfortable in terms of her job responsibilities and duties. Similarly, Mr. Messmer testified that he at no time had reservations as to petitioner's forthrightness and honesty in terms of producing the documents and information necessary for him to prepare full and accurate tax returns. Even the revenue agent who conducted the examination of petitioner's income tax return conceded that petitioner cooperated with her in every aspect requested and provided her with all pertinent records and documents. These witnesses do not paint petitioner as one out to deprive the Commissioner of his rightful tax revenue.

The only potential "badge of fraud" in this case is petitioner's agreement to pay the workers in cash. The cash arrangement, however, was not part of a scheme on the part of

petitioner to underreport employment taxes. In each case, the request to be paid in cash was initiated by the worker. Petitioner agreed to the workers' requests because he needed additional labor to satisfy his exceptionally high volume of contracts. Furthermore, petitioner conditioned the arrangement on the understanding that the company would issue a Form 1099 reflecting the cash payments. Petitioner instructed Ms. Gerber to see that Forms 1099 were in fact issued to the workers. It was thus petitioner's intent that the Commissioner be aware of the cash payments as opposed to the contrary.

Respondent has not established, let alone on a clear and convincing basis, that petitioner intended to conceal, mislead, or otherwise prevent the collection of taxes. As a result, section 6501(c)(1) does not operate to extend the period of limitations on assessment beyond the 3-year period set out in section 6501(a). Accordingly, as the period of limitations expired prior to the issuance of respondent's notice of determination, the assessment of any additional employment tax liability for the taxable periods in issue is barred.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.