T.C. Memo. 2009-6

UNITED STATES TAX COURT


DAVID C. LOEB, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

HAROLD E. MOLAISON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 6975-07, 7232-07.      Filed January 7, 2009.


<u>Michael E. Guarisco</u> and <u>Jean K. Niederberger</u>, for
petitioners.

<u>Joseph Ineich</u> and <u>Mary Beth Calkins</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  These cases are before the Court
consolidated for purposes of trial, briefing, and opinion.
Respondent determined deficiencies and penalties with respect to
petitioners' Federal income taxes as follows:

David C. Loeb, docket No. 6975-07

| Year | Deficiency | Fraud Penalty Sec. 6663 |
|------|-----------|-------------------------|
| 1996 | $406,537 | $304,903 |

Harold E. Molaison, docket No. 7232-07

| Year | Deficiency | Fraud Penalty Sec. 6663 |
|------|-----------|-------------------------|
| 1996 | $295,298 | $221,474 |

The issue for decision is whether the statute of limitations under section 6501(a)[1] bars the issuance of the notices of deficiency. We hold that it does.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts and the second supplemental stipulation of facts, together with the attached exhibits, are incorporated herein by this reference. At the time petitioners filed their petitions, they resided in Louisiana.

Petitioners are attorneys who represented landowners in a regulatory takings case referred to as the Bayou Aux Carpes (BAC) litigation. Mr. Molaison's practice dealt with general civil

---

[1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

litigation and succession work while Mr. Loeb's practice dealt with land use and real property law.

Mr. Molaison was intimately familiar with the property underlying the BAC litigation. His father, who passed away in 1991, was also an attorney and had represented BAC landowners in a prior action against the Environmental Protection Agency (EPA) in the 1970s in Louisiana State court. Mr. Molaison had helped his father in that action as a law clerk and an attorney. He also inherited a small tract of BAC property from his father.

The BAC suits comprised four cases that were filed in 1991 in response to a determination by the EPA that approximately 3,000 acres of land located in southern Louisiana constituted nonpermitable wetland. The landowners of the BAC property sought to develop the property and brought suit in order to contest the EPA's designation of the property as wetland. The landowners in two of the BAC suits hired petitioners to represent them. The four cases were eventually consolidated and petitioners represented all of the landowners in the consolidated BAC litigation.

Petitioners entered into contracts for legal services with the landowners which gave petitioners an undivided 25-percent interest in any recovery and prohibited the clients from settling or otherwise discontinuing the suit without the consent of

petitioners. In late March 1996 petitioners reached an agreement with the U.S. Government to settle the case for $8,250,000.

In order to determine the tax issues associated with the likely settlement, petitioners, who had no expertise in tax law, sought help from David Lukinovich, an attorney certified as a tax specialist by the Louisiana State Bar. On April 23, 1996, after an initial telephone conversation with Mr. Loeb, Mr. Lukinovich wrote a letter to Mr. Loeb offering his services to petitioners' clients on the tax aspects of the settlement. In his letter Mr. Lukinovich discussed section 1033 and the income deferral benefits it extended to landowners in involuntary conversion proceedings.

Petitioners believed they had an ownership interest in the land subject to the BAC litigation as a result of their contingency fee agreement with the BAC landowners.[2] On August 15, 1996, Mr. Loeb wrote to Ann Navaro, one of the assistant U.S. attorneys (AUSAs) handling the BAC litigation, in response to her request that he identify all parties to the settlement who had not been identified in the Government's initial draft of the settlement agreement. In his letter Mr. Loeb identified several

---

[2]This was separate and in addition to Mr. Molaison's status as an owner because of the small parcel of BAC property he inherited from his father. Mr. Molaison received settlement proceeds of $185,971 from the involuntary conversion of his inherited property. He elected to defer recognition of the proceeds under sec. 1033(a)(2). The validity of that election is not in dispute.

parties, including himself and Mr. Molaison, who should be added to the settlement agreement and to the act of sale. AUSAs Ann Navaro and Marc Smith agreed to add petitioners as landowners to the settlement agreement and act of sale. Ms. Navaro and Mr. Smith were aware that petitioners intended to classify themselves as owners in part to take advantage of section 1033. On August 20, 1996, petitioners were listed as owners on the executed settlement agreement.

On August 21, 1996, Mr. Lukinovich sent Mr. Loeb a letter suggesting that petitioners could potentially defer their contingency fee income under section 1033(a) if the Government recognized them as landowners in the BAC litigation.

On August 29, 1996, petitioners entered into a joint stipulation for entry of judgment in the BAC cases with the Government. On August 30, 1996, the U.S. Court of Federal Claims entered judgment settling the BAC cases with the payment of $8,250,000 by the Government in exchange for the BAC property.

On September 4, 1996, petitioners met with Gerald Duhon, Mr. Loeb's certified public accountant (C.P.A.), Shannon Chabaud, Mr. Molaison's C.P.A., and Mr. Lukinovich at petitioners' office regarding tax planning for petitioners and the preparation of their 1996 Federal income tax returns. Mr. Lukinovich conducted the meeting and explained that his research indicated that petitioners were entitled to defer recognition of their BAC

litigation fees under section 1033(a). Mr. Lukinovich also proposed that petitioners prepare a document clarifying that the intent of petitioners' clients was to transfer an ownership interest in the BAC property to petitioners as compensation for their representation. Petitioners decided to prepare acts of correction for their clients to sign.

Petitioners prepared the acts of correction with the input of Mr. Lukinovich. Petitioners did not believe that they had to obtain the signatures of all of their clients on the acts of correction for their BAC litigation fees to be qualified under section 1033.

In late September and early October 1996 petitioners held a series of meetings with their clients to have them sign pre-closing documents. During these meetings, petitioners requested that the clients sign the acts of correction. Petitioners exerted no pressure or undue influence on any client. Petitioners did not misrepresent the contents of the acts of correction to any client. Out of 53 clients, 32 chose to sign the acts of correction, 15 chose not to sign and 6 were never offered the chance to sign. Two clients consulted with Mr. Lukinovich regarding the acts of correction before signing them.

On October 8, 1996, petitioners executed the act of sale of the BAC property to the Government. Petitioners executed the act of sale individually as vendors. All clients, including those

who did not execute an act of correction, received all of the proceeds due to them under the act of sale. As a result of the settlement, Mr. Loeb and Mr. Molaison received $1,056,000 and $791,503, respectively.

On December 1, 1996, and April 4, 1997, Mr. Lukinovich wrote petitioners letters regarding petitioners' reinvestment of the proceeds from the act of sale in order to qualify for rollover treatment under section 1033(a)(2). Mr. Lukinovich provided the language for section 1033(a)(2) elections attached to petitioners' 1996 and 1997 income tax returns, and reviewed the language before the submission of petitioners' Forms 1040, U.S. Individual Income Tax Return, for 1996 and 1997. At no time did Mr. Lukinovich indicate that petitioners were barred from making the section 1033(a)(2) election if not all of their clients signed the acts of correction.

In 1997 petitioners purchased replacement property and listed said property on their 1996 Federal income tax returns in an effort to comply with the requirements of section 1033.

On November 19, 1999, Revenue Agent William Witteman sent Mr. Loeb a letter indicating that he was auditing Mr. Loeb's 1996 Federal income tax return. On April 20, 2000, Mr. Witteman sent Mr. Molaison a letter indicating that he was auditing Mr. Molaison's 1996 Federal income tax return. Petitioners fully complied with their audits and produced all documents requested

by Mr. Witteman, including all acts of correction both signed and unsigned.

Respondent prosecuted petitioners for committing criminal fraud on their 1996 Federal income tax returns. In May 2005 petitioners were acquitted of all criminal fraud charges related to their 1996 Federal income tax returns at a trial held in New Orleans, Louisiana.

On January 1, 2007, respondent issued notices of deficiency to petitioners. Petitioners filed timely petitions with this Court and trial was held in New Orleans, Louisiana on September 22 and 23, 2008.

OPINION

Petitioners contend that the 3-year period of limitations on assessment in section 6501(a) expired before respondent issued the notices of deficiency and respondent's assessment is barred. Respondent argues that the period of limitations in section 6501(a) does not apply because petitioners filed false or fraudulent returns with the intent to evade taxes for 1996. See sec. 6501(c)(1). Accordingly, our determination of whether the period of limitations expired before the notice of deficiency was issued depends on whether petitioners committed fraud in the filing of their 1996 returns. The determination of fraud for purposes of section 6501(c)(1) is the same as the determination of fraud for purposes of the penalty under section 6663. <u>Neely</u>

v. Commissioner, 116 T.C. 79, 85 (2001); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 548 (2000).

Section 6663(a) provides: "If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud." The Commissioner bears the burden of proving by clear and convincing evidence that an underpayment of tax was attributable to fraud. Sec. 7454(a); Rule 142(b). In order to show fraud, respondent must prove: (1) An underpayment exists; and (2) petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

A.   Underpayment of Tax

Respondent must first show by clear and convincing evidence that there was an underpayment of tax in 1996. As discussed below, respondent has satisfied his burden of proof on this issue.

Respondent has shown that petitioners received income in 1996 for legal services rendered in the BAC cases. Petitioners' sole argument is that their fees constituted a property interest in the BAC land by virtue of the contracts for legal services and acts of correction they executed with the BAC landowners.

Pursuant to this property interest, petitioners claim they qualified for the nonrecognition provisions of section 1033.[3]

Gross income means all income from whatever source derived, unless excluded by law. Sec. 61(a); <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 433 (1955). Contingency fees are not excluded by law from the gross income of an attorney who earns them through the performance of legal services. See, e.g., <u>Kochansky v. Commissioner</u>, T.C. Memo. 1994-160, affd. in part and revd. in part 92 F.3d 957 (9th Cir. 1996).

---

[3]Petitioners further claim that they obtained their property interest in the BAC land when it was nonpermitable wetland and effectively worthless, thus precluding the recognition of income upon receipt of the interest.

Section 1033 provides, under prescribed circumstances,[4] for relief from taxpayers' gains realized from involuntary conversion of property. The relief provided by section 1033(a) is deferral of the gain from involuntary conversion, so long as the proceeds are used to acquire qualified replacement property. See, e.g., <u>Willamette Indus., Inc. v. Commissioner</u>, 118 T.C. 126, 130-131 (2002).

---

[4]Sec. 1033 provides, in pertinent part, as follows:

SEC. 1033(a). General Rule.--If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted--

\* \* \* \* \* \* \*

(2) Conversion into money.--Into money or into property not similar or related in service or use to the converted property, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) Nonrecognition of gain.--If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary may by regulations prescribe. \* \* \*

State law does not convert an attorney-client relationship into a partnership or joint venture for purposes of Federal tax law. Commissioner v. Banks, 543 U.S. 426, 437 (2005) (stating that no State laws, even those that purport to give attorneys an ownership interest in their fees, "convert the attorney from an agent to a partner"). Accordingly, petitioners erred in believing their fees qualified for the nonrecognition provisions of section 1033(a), and made an underpayment of tax in 1996.[5]

B. Fraudulent Intent

Because direct evidence of fraud is rarely available, fraud may be proved by circumstantial evidence and reasonable inferences from the facts. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). Courts have developed a nonexclusive list of factors, or "badges of fraud", that demonstrate fraudulent intent. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). These badges of fraud include: (1) Understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of

---

[5]However, for reasons discussed below, our holding that petitioners made an underpayment under the law as it exists today does not militate in favor of determining that petitioners intended to commit fraud in 1996.

the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash.  Id.; see also Spies v. United States, 317 U.S. 492, 499 (1943); Terrell Equip. Co. v. Commissioner, 343 F.3d 478, 482 (5th Cir. 2003), affg. T.C. Memo. 2002-217; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).  Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence.  Niedringhaus v. Commissioner, supra at 211.  Petitioners' behavior with respect to their income may be evaluated in the light of these factors, as follows.

(1) Understated Income

Respondent has disproved petitioners' assertion that their fees reflected an interest in the underlying BAC property.  However, this factor is mitigated by petitioners' inclusion of these proceeds on their 1996 Federal income tax returns as funds related to a section 1033 election.  Unlike other fraud cases where taxpayers attempted to conceal their fees for services or characterize them as something entirely different, petitioners never characterized their fees from the BAC cases as anything but fees.  See, e.g., Talmage v. Commissioner, T.C. Memo. 2008-34 (fraudulent taxpayers attempted to characterize their fees for services as loans or hide them altogether).

(2) <u>Inadequate Records</u>

The record does not indicate that petitioners maintained inadequate records.  To the contrary, petitioners' client fee agreements and section 1033 election were well documented.

(3) <u>Plausible Behavior</u>

Petitioners believed, because of the assertions of Mr. Lukinovich, that their fees represented an interest in BAC property under Louisiana law.  Mr. Lukinovich believed that petitioners possessed an interest in the BAC property because of the acts of correction and the property sale restrictions petitioners' contingency fee agreement placed on the BAC landowners.  Mr. Lukinovich based his advice to petitioners on <u>Cotnam v. Commissioner</u>, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957), overruled by <u>Commissioner v. Banks</u>, <u>supra</u>, and its application to Louisiana law.  For purposes of examining fraudulent intent, it is not necessary for us to determine petitioners' specific rights to their contingency fees in 1996 under Louisiana law.

Petitioners' reliance on Mr. Lukinovich's assertion that their fees represented an interest in BAC property was plausible given the perceived ambiguity of the law in Louisiana in 1996.[6]

_____

[6]Before the Supreme Court's decision in <u>Commissioner v. Banks</u>, 543 U.S. 426, 437 (2005), the effect of State law on a

(continued...)

Further, petitioners received affirmation of this belief when AUSAs Marc Smith and Ann Navaro added petitioners' names to the list of BAC landowners on the settlement agreement and act of sale. Accordingly, we find petitioners' behavior regarding their contingency fees to be both plausible and consistent.

(4) Concealment of Income

Petitioners did not conceal income or assets. The proceeds they received from the BAC cases were listed on their 1996 Federal income tax returns as being subject to a section 1033 election.

(5) Compliance With Tax Officials

Petitioners fully complied with the audit process and all court proceedings.

---

[6](...continued)
lawyer's right to a contingency fee was unclear. See Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957), overruled by Commissioner v. Banks, supra. In Cotnam, the old Court of Appeals for the Fifth Circuit held that the amount of the contingent fee paid out of a judgment to a taxpayer's attorneys was not income to the taxpayer. Id. at 126. The court reasoned that a contingent fee contract operated as a lien on the recovery under Alabama law, and thus served to transfer a part of the taxpayer's claim to the attorneys. Id. at 125-126. As late as 2001, other Courts of Appeals followed Cotnam for the proposition that State law determines the rights and interests of an attorney to a contingency fee, particularly in the context of postjudgment interest. See, e.g., Foster v. United States, 249 F.3d 1275, 1279 (11th Cir. 2001), overruled by Commissioner v. Banks, supra; Estate of Clarks v. United States, 202 F.3d 854, 857 (6th Cir. 2000), overruled in part by Commissioner v. Banks, supra.

(6) <u>Illegal Activities</u>

Petitioners never engaged in illegal activities.  None of their clients were subject to undue influence in signing the acts of correction, and all received the settlement proceeds to which they were entitled.

(7) <u>Pattern of Misconduct With Intent To Mislead</u>

Petitioners did not engage in a pattern of conduct to mislead tax authorities.  As previously stated, petitioners honestly believed they were entitled to a section 1033 election, and their actions reflect this.

(8) <u>Credibility of Testimony</u>

Petitioners' testimony was credible.

(9) <u>False Documents</u>

Petitioners never intentionally filed a false document.

(10) <u>Failing To File Tax Returns</u>

Petitioners timely filed their 1996 Federal income tax returns.

(11) <u>Dealing in Cash</u>

Petitioners did not deal in cash.

As a result of the paucity of badges of fraud in this case, we find that respondent has failed to show by clear and convincing evidence that petitioners filed their 1996 returns with the intent to evade tax.  Therefore, the 3-year period of limitations under section 6501(a) applies to petitioners' 1996

tax year, and respondent is barred from assessing any deficiencies in petitioners' tax for that year.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for petitioners</u>.