T.C. Memo. 2011-161

UNITED STATES TAX COURT

WILLIAM AND SHARON NORRIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2224-09.                    Filed July 7, 2011.

<u>John A. Beam III</u> and <u>John M. Sharp</u>, for petitioners.

<u>Caroline R. Krivacka</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax and penalties as follows:

| Year | Deficiency | Penalties Sec. 6663(a) |
|------|-----------|------------------------|
| 1996 | $83,907 | $62,930 |
| 1998 | 29,569 | 22,145 |

On March 16, 2010, the Court granted respondent's motion for partial summary judgment, thereby ruling that petitioner William Norris (Mr. Norris) is collaterally estopped from challenging the deficiency and fraud penalty for 1998 because of his criminal conviction for tax evasion pursuant to section 7201.[1]  As a result, the Court further held that the limitations period for Mr. Norris for 1998 remained open at the time the notice of deficiency was issued.  On March 31, 2011, the Court granted respondent's motion for leave to file an amendment to answer out of time to correct an error in respondent's calculation of the deficiency and penalties.[2]

The remaining issues for decision are:

(1)  Whether petitioners are subject to the section 6663 civil fraud penalty for 1996 and whether petitioner Sharon Norris (Mrs. Norris) is subject to the section 6663 civil fraud penalty for 1998;

(2)  whether the period of limitations for assessing taxes and penalties against petitioners expired for 1996 and whether

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

[2]The original notice of deficiency included deficiency and sec. 6663(a) penalty calculations of $71,699 and $53,774 for 1996, respectively, and $39,641 and $29,699 for 1998, respectively.

the period of limitations for assessing taxes and penalties against Mrs. Norris expired for 1998; and

(3) if the Court determines that the periods of limitations for assessing taxes and penalties were open for 1996 and 1998 at the time of assessment, whether respondent's deficiency determinations and related fraud penalties are correct.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time petitioners filed their petition, they lived in Tennessee.

I. Background

Mr. Norris was born in Nashville, Tennessee. He completed a 10th grade education and began working in the specialty welding business in the late 1970s. Mrs. Norris completed some college courses at Macon College in Georgia. While living in Georgia, she worked as a purchasing agent for the City of Macon Water Department. Petitioners were married on December 28, 1990. In 1996 petitioners bought land in Joelton, Tennessee, and began construction on a new home. Petitioners' home was completed in 1998. Mr. Norris acted as the general contractor during the construction of petitioners' home and performed much of the work himself to reduce costs.

Mr. Norris owned and operated a specialty welding business until early 1996. As his business grew, he was required to travel frequently to jobsites throughout the United States. He employed new workers at the different jobsites. Mr. Norris testified that one of the challenges of traveling from town to town was that it was sometimes difficult to cash checks to pay his workers. As a result, he developed the habit of going to the bank before traveling to a jobsite to get the cash he felt was necessary for each job. If he did not spend all the cash he had on a jobsite, he put it in a safe in his home. Mr. Norris accumulated cash this way over a 6- to 7-year period. In 1996 he had approximately $100,000 in cash in his home.

## II. The Little Barn Market

### A. Recordkeeping and Reporting

In 1994 Mr. Norris purchased a convenience store and gas station in Nashville, Tennessee, called the Little Barn Market (the market). Mr. and Mrs. Norris both worked at the market in 1996 and 1998. Mrs. Norris wrote and signed checks to pay vendors, prepared monthly sales summaries, and prepared and filed sales and employment tax returns. On their 1996 and 1998 Federal income tax returns, petitioners reported gross receipts from the market of $717,550 and $840,672, respectively. The gross receipts reported on petitioners' 1996 Federal income tax return

omitted at least $200,000 in sales from the market because of a mistake in Mrs. Norris' calculations.

Petitioners hired Evan Rogers (Mr. Rogers) to represent them in a sales tax dispute with the State of Tennessee. Mr. Rogers, who was not involved in the preparation of petitioners' 1996 Federal income tax return, reviewed the market's records for 1996 and uncovered Mrs. Norris' mistake.

The market's cash register printed daily sales records on what petitioners referred to as the "Z-tapes". Mrs. Norris totaled the daily Z-tapes and created monthly sales records (the Z-out reports). The Z-out reports have five columns of calculations. The first column is for total taxable sales. The next four columns list the sales figures for newspapers, kerosene, gasoline, and food stamps, items with separate Z-out functions on the market's cash register because they were not subject to sales tax. Mr. Rogers' analysis revealed that Mrs. Norris had subtracted the totals from these four columns from total taxable sales under the mistaken belief that the Z-out reports for total taxable sales included those amounts. As a result, because Mrs. Norris believed that the totals for newspapers, kerosene, gasoline, and food stamps were already included in total taxable sales for Federal tax purposes on the Z-out reports, she failed to add those items to total taxable

sales for Federal tax reporting purposes.  Mrs. Norris did not understand the mistake until preparation for this trial.

B.    Illegal Poker Machines

Mr. Norris owned and operated illegal poker machines in the back room of the market in 1996 and 1998.  On August 8, 1996, the Metropolitan Police Department of Nashville-Davidson (the metro police) seized eight illegal poker machines from the market.  Mr. Norris was arrested and charged and pleaded guilty to a misdemeanor gambling offense.  After the 1996 seizure Mr. Norris purchased new illegal poker machines and again operated them in the back room of the market.  The metro police seized the replacement illegal poker machines in January 1997.  Mr. Norris was arrested and charged and pleaded guilty to a misdemeanor gambling offense with respect to the 1997 seizure.  After the 1997 seizure Mr. Norris once again replaced the illegal poker machines.  The metro police seized these illegal poker machines in 1998.  Mr. Norris was once again arrested and charged and pleaded guilty to a misdemeanor gambling offense.

The illegal poker machines generated illegal gambling income.  Mr. Norris failed to keep sufficient records of his illegal gambling income, but he earned at least $22,380 from his illegal poker machine business in 1996.  Petitioners' Federal income tax returns for 1996 and 1998 were prepared by John Gaddy (Mr. Gaddy), a former revenue agent with the Internal Revenue

Service (IRS).  Mr. Gaddy had operated a tax preparation business since 1974, and he first worked with Mr. Norris to help prepare tax returns for Mr. Norris' specialty welding business long before 1996.

Mr. Gaddy knew that Mr. Norris operated an illegal poker machine business in the back room of the market in 1996.  In fact, he wrote "poker machine income" in reference to Mr. Norris' $22,380 estimate of income from the illegal poker machines in 1996 that was written in Mr. Norris' notes.  Mr. Gaddy testified that Mr. Norris' income from the illegal poker machines was reported on petitioners' tax returns.  On cross-examination, however, Mr. Gaddy testified that he was not aware of petitioners' illegal gambling income in 1996.  He later explained this conflicting testimony by stating that he did not have his workpapers in front of him and could not remember exactly what had happened.

III. Legal Gambling

During 1996 and 1998 petitioners gambled frequently in Las Vegas, Nevada.  Petitioners reported legal gambling income of $96,210 in 1996.  A portion of this amount was documented using Forms W-2G, Certain Gambling Winnings, given to petitioners by the casinos where they had gambled.  Petitioners orally informed Mr. Gaddy of their winnings in excess of those documented by Forms W-2G.  Where petitioners' oral accounts of their winnings

exceeded their documentation, Mr. Gaddy reported the higher of the two numbers.

Petitioners did not report an additional $43,120 of legal gambling income on their 1996 Federal income tax return. Of this amount, $35,800 is attributable to a 1957 Corvette that Mr. Norris won at the Mirage Casino in a slot machine tournament. The Mirage Casino issued petitioners a Form 1099-MISC, Miscellaneous Income, for $35,800 but mailed it to the wrong address.

## IV. Mr. Norris' Criminal Case

In March 2005 Mr. Norris was indicted on two counts of criminal tax evasion under section 7201, one count for 1996 (count 1) and one count for 1998 (count 2). On January 13, 2006, he pleaded guilty to count 2 in the U.S. District Court for the Middle District of Tennessee. In the plea hearing of the criminal case he admitted to taking "affirmative acts in 1998 to evade tax by conducting his affairs in cash, destroying records, and by concealing petitioners' true and correct income." Mr. Norris further admitted a total tax deficiency for 1996 and 1998 of approximately $111,298 but did not admit to taking any affirmative acts in 1996 to evade tax. As part of Mr. Norris' plea agreement, the Department of Justice dismissed count 1. On April 15, 2006, Mr. Norris was sentenced to 15 months in prison and ordered to pay restitution of $111,298 to the IRS.

V.   <u>Deficiency Determination</u>

On October 22, 2008, respondent issued a notice of deficiency to petitioners for 1996 and 1998.  As part of the criminal investigation of Mr. Norris, David Martin (Mr. Martin) of the IRS Criminal Investigation Division used the indirect net worth method to reconstruct petitioners' income.  According to Mr. Martin's reconstruction, after allowable deductions and exemptions of $104,862 petitioners' underreported taxable income for 1996 was $226,628.  For 1998 Mr. Martin's reconstruction determined petitioners' underreported taxable income to be $84,002 after allowable deductions and exemptions of $59,361.

Mr. Martin's analysis attributes income to petitioners for expenses relating to the construction of their home.  However, his analysis confused bids with amounts actually paid.  For example, Mr. Martin used a bid from Oakley Lumber of $41,000 (the Oakley Lumber bid) as the amount petitioners paid for lumber but proved only $13,000 was paid.  Further, the Oakley Lumber bid included nails and bolts, which were eventually purchased separately.  Mr. Martin also failed to properly account for petitioners' accumulation of cash and its use to pay certain construction workers, to make Mr. Norris' spousal support payments to his ex-wife, and to pay certain market vendors. Petitioners used an unusual system to make record of payment.

They would write a check to the payee and immediately cash the check for the payee.  The check served as a record of payment.

OPINION

Ordinarily, the limitations period for assessment is 3 years from the later of the filing date or the due date of the return. Sec. 6501(a).  The parties do not dispute that the notice of deficiency, even with agreed-upon extensions, was not issued within the statutory deadlines set forth in section 6501(a). Respondent issued the notice of deficiency on October 22, 2008, and relied on section 6501(c)(1), which states that "in the case of false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time." Accordingly, our determination of whether the period of limitations was open on October 22, 2008, depends on proof of fraud.

I.   Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that those determinations are incorrect.  Rule 142(a)(1).  The Commissioner has the burden of proof by clear and convincing evidence with respect to a determination of fraud. Rule 142(b).  If fraud is proven, the Commissioner

will also have the burden of proof with respect to an increased deficiency.  Rule 142(a)(1).

II.  Fraud Generally

The determination of fraud for purposes of section 6501(c)(1) is the same as the determination of fraud for purposes of the penalty under section 6663.  Neely v. Commissioner, 116 T.C. 79, 85 (2001); Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533, 548 (2000).  For Federal tax purposes, fraud entails intentional wrongdoing with the purpose of evading a tax believed to be owing.  See Neely v. Commissioner, supra at 86.  In order to show fraud, respondent must prove:  (1) An underpayment exists; and (2) petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

A.    Underpayment of Tax

Respondent must first show by clear and convincing evidence that an underpayment of tax exists for 1996 and for 1998.  The parties have stipulated that:  (1) Gross receipts reported from the market for 1996 omitted $200,000; and (2) petitioners did not report $43,120 of gambling income for 1996.  Mr. Norris is collaterally estopped from denying the 1998 deficiency.

Accordingly, respondent has proven that an underpayment of tax exists for 1996 and for 1998.[3]

B.    Fraudulent Intent

Because direct evidence of fraud is rarely available, fraud may be proved by circumstantial evidence and reasonable inferences from the facts.  Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).  Courts have developed a nonexclusive list of factors, or "badges of fraud", that demonstrate fraudulent

---

[3]Respondent determined petitioners' underpayments through Mr. Martin's reconstruction of petitioners' income using the net worth method.  The net worth method computes income by determining a taxpayer's net worth at the beginning and end of a period.  The difference between the amounts is the increase in net worth.  An increase in a taxpayer's net worth, plus his nondeductible expenditures, less nontaxable receipts, may be considered taxable income.  Holland v. United States, 348 U.S. 121, 125 (1954).  While the net worth method is an acceptable method of reconstructing petitioners' income, its use requires the exercise of "great care and restraint" to prevent petitioners from being "ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute."  Id. at 129.

For 1996 respondent determined petitioners' underpayment to be greater than the underpayment attributable to petitioners' stipulated omissions.  Respondent spent considerable time attributing additional income to petitioners from expenses relating to the construction of their home.  Petitioners identified numerous errors in this analysis, including respondent's mistaking of bids for amounts paid and failing to properly account for petitioners' use and accumulation of cash.  Respondent's failure to prove the accuracy of his net worth computations renders the computations incapable of sustaining the deficiencies circumstantially derived therefrom.  Id.  Thus, we limit petitioners' underreported gross income and related deficiency for 1996 to amounts resulting from the $200,000 of omitted gross receipts from the market and $43,120 of omitted gambling income, as stipulated.

intent. <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 211 (1992). These badges of fraud include: (1) Understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash. <u>Id.</u>; see also <u>Spies v. United States</u>, 317 U.S. 492, 499 (1943); <u>Morse v. Commissioner</u>, 419 F.3d 829, 832 (8th Cir. 2005), affg. T.C. Memo. 2003-332; <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 910 (1988). Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence. <u>Niedringhaus v. Commissioner</u>, <u>supra</u> at 211. Respondent must prove fraud for each year at issue. See <u>id.</u> at 210; <u>Ferguson v. Commissioner</u>, T.C. Memo. 2004-90.

III. <u>Fraud Penalties--Mr. Norris</u>

As discussed above, Mr. Norris is collaterally estopped from denying the deficiency and fraud penalties for 1998.[4] Respondent argues that Mr. Norris is also subject to the fraud penalty for 1996. We disagree. No single factor or combination of factors

---

[4]The parties agree that amounts Mr. Norris pays as restitution in his criminal case should be credited against any civil deficiency judgment.

adverse to petitioner is sufficient in this case to establish fraud for 1996. Therefore we will undertake to weigh the factors equally, and on that basis we find respondent has failed to provide clear and convincing evidence of fraud. Mr. Norris' behavior with respect to petitioners' income shows four of the above-listed factors in support of a finding of fraud, five factors against, and two factors neutral, as follows.

A. <u>Understating Income</u>

As stated above, petitioners understated their income in 1996 by $200,000 with respect to sales from the market and by $43,120 of gambling income. Accordingly, this factor favors a finding of fraud.

B. <u>Maintaining Inadequate Records</u>

Mr. Norris failed to maintain adequate records of income from his illegal poker machine business. Further, petitioners did not report as income the value of the 1957 Corvette as reported by the Mirage Casino on Form 1099-MISC. Petitioners argue, however, that the Mirage Casino sent the Form 1099-MISC for the 1957 Corvette to the wrong address. Petitioners further argue that they produced appropriate records for all other gambling winnings in 1996 and their failure to produce the Form 1099-MISC for the 1957 Corvette was an honest mistake caused by the mailing error.

With respect to the market, petitioners produced records of the market's sales and expenses, inventory, and tax records. Taxpayers are required to maintain records sufficient to establish the amounts of allowable deductions and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999). Respondent conceded that petitioners are entitled to $104,862 of itemized deductions for 1996. Petitioners kept adequate records with respect to the market but failed to maintain adequate records with respect to their gambling winnings. Accordingly, this factor is neutral.

C. Implausible or Inconsistent Explanations of Behavior

Respondent argues that it is implausible that petitioners built their home with approximately $13,000 of lumber when the Oakley lumber bid estimated a need for approximately $41,000 of lumber. Respondent fails, however, to provide a factual basis for this assertion with evidence pertinent to the construction and design of petitioners' home. Mr. Norris performed a significant amount of the work on petitioners' home on his own and was thus able to keep costs low. Additionally, Mr. Norris purchased the lumber apart from the nails and bolts, which were included in the Oakley lumber bid. Accordingly, respondent has not demonstrated implausible or inconsistent explanations of

behavior, and this factor goes against a finding of fraudulent intent.

D.    Concealment of Income or Assets

It is unclear whether petitioners reported income from Mr. Norris' illegal poker machine business on their 1996 Federal income tax return.  Mr. Norris' notes with respect to income and expense items of the market include a notation for income from the illegal poker machines of $22,380.  Petitioners' accountant, Mr. Gaddy, wrote the term "poker machine income" above Mr. Norris' notation of $22,380.  Mr. Gaddy testified that he was aware that Mr. Harris was operating the illegal poker machines in 1996 and that any income from the illegal poker machines was reported.  During respondent's cross-examination, Mr. Gaddy testified that the $22,380 was not reported on petitioners' Schedule C, Profit or Loss From Business, and he did not recall whether it was reported in petitioners' gross receipts.  Mr. Gaddy explained this conflicting testimony by saying that he did not have his workpapers available and was not sure.

Mr. Norris' notes were provided to Mr. Gaddy, who inserted the term "poker machine income".  Respondent has not provided any evidence that petitioners attempted to conceal this income, but respondent argued that it was petitioners' responsibility to review their tax return to verify its accuracy.  Accordingly, although it is unclear whether Mr. Gaddy included the $22,380 as

part of petitioners' gross receipts, this factor goes against a finding of fraudulent intent.

### E.    Failing To Cooperate With Tax Authorities

Respondent has not presented any evidence that petitioners failed to cooperate with tax authorities.  Accordingly, this factor goes against a finding of fraudulent intent.

### F.    Engaging in Illegal Activities

Petitioners concede that Mr. Norris kept illegal poker machines at the market in 1996.  Accordingly, this factor favors a finding of fraud.

### G.    An Intent To Mislead Which May Be Inferred From a Pattern of Conduct

The metro police seized illegal poker machines from the market in 1996.  Mr. Norris replaced the seized poker machines in 1997.  After the metro police seized the replacement illegal poker machines in 1997, Mr. Norris again replaced them in 1998.  In the plea hearing of Mr. Norris' criminal case he admitted to taking affirmative acts in 1998 to evade tax by conducting his affairs in cash, destroying records, and concealing petitioners' true and correct income.  Accordingly, this factor favors a finding of fraud.

### H.    Lack of Credibility of the Taxpayer's Testimony

Respondent argues that Mr. Norris' testimony was not credible because he downplayed the profitability of the illegal poker machines.  This argument is based on Mr. Norris' testimony

that the machines generated "some income", rather than "a lot of income".  Whether $22,380 is "some income" or "a lot of income" is a subjective question to which there is no right or wrong answer.

Throughout his testimony the Court found Mr. Norris to be credible.  While some of his business practices were unusual, particularly his use of cash, he provided logical explanations for his behavior that respondent was unable to refute.  Accordingly, this factor goes against a finding of fraudulent intent.

I.   Filing False Documents

Petitioners concede that they understated their income on their 1996 Federal income tax return.  Respondent has not presented any evidence that petitioners filed any other false documents.  Accordingly, this factor is neutral.

J.   Failing To File Tax Returns

On November 1, 1998, petitioners filed their 1996 income tax return.  Mr. Norris' plea agreement in his criminal case required him to file amended returns for 1996 and 1998.  Mr. Norris did not file amended returns as required.  Accordingly, this factor favors a finding of fraud.

K.   Dealing in Cash

Petitioners sometimes used cash to pay Mr. Norris' ex-wife, workers on the construction of petitioners' home, and certain of the market's vendors.  Mr. Norris explained that he began using

cash in his welding business in the late 1970s. He explained that he traveled as part of the welding business and because it was difficult to cash checks, he developed the habit of taking large sums of cash with him to a jobsite to pay the workers. Often, after a job had been completed and he had paid the workers, he had cash left over. As a result, Mr. Norris accumulated a cash hoard. The Court recognizes that Mr. Norris' propensity to accumulate cash may be considered unusual in today's business environment. Nonetheless, because Mr. Norris used cash regularly throughout his career, the Court does not find his mere continued use of cash to be evidence of an intent to evade tax.

Respondent has not provided evidence that petitioners tried to hide or conceal cash transactions in 1996. Petitioners oftentimes paid workers on the construction of their home in cash by providing them with a check and immediately cashing the check. The check would then become petitioners' record of payment. This process was also used for spousal support payments made to Mr. Norris' ex-wife. Mrs. Norris explained that cash payments made to the market's vendors were based on receipts that were used to determine vendor totals. Petitioners kept a record of all vendors paid in cash. Accordingly, there is no evidence that petitioners used cash to avoid reporting requirements, and this factor favors against a finding of fraudulent intent.

As discussed above, respondent must provide proof by clear and convincing evidence with respect to the determination of fraud. See Rule 142(b). Respondent has proven only four badges of fraud with respect to Mr. Norris in 1996. Mr. Norris' plea agreement in his criminal case does not provide any additional support for respondent's determinations. Despite conceding a deficiency, Mr. Norris' plea agreement does not include any concession with respect to fraud in 1996. Thus, Mr. Norris is not liable for the fraud penalties for 1996.

IV.  Fraud Penalties--Mrs. Norris

Generally, a husband and wife are jointly and severally liable for the total tax due on their joint Federal income tax return. Sec. 6013(d)(3). Fraud, however, is not imputed from one spouse to the other. Sec. 6663(c). Accordingly, respondent has the burden of proving by clear and convincing evidence that some part of each underpayment is due to the fraud of Mrs. Norris. See Stone v. Commissioner, 56 T.C. 213, 227-228 (1971); Ortiz v. Commissioner, T.C. Memo. 1998-141.

Respondent argues that Mrs. Norris knew of the illegal poker machines in the back of the market; however, respondent has not presented any evidence that she was involved in Mr. Norris' illegal poker machine business or had any direct knowledge of such operations. While it is likely that she was not completely unaware of Mr. Norris' activity, that fact alone cannot sustain a finding of fraud as to her. See Ortiz v. Commissioner, supra.

Respondent further argues that Mrs. Norris was the primary bookkeeper for the market and, as such, was aware that gross receipts from the market were understated. Again, however, respondent has failed to present any evidence of these assertions. Petitioners concede that gross receipts from the market were underreported; however, they argue that Mrs. Norris' made an innocent mistake in reporting the sales totals from the Z-out reports. Mr. Rogers discovered this mistake while helping Mrs. Norris work through a State sales tax audit of the market. According to Mr. Rogers, Mrs. Norris failed to report gross receipts from gasoline, kerosene, newspapers, and other items that were reported separately on the Z-tapes. Mr. Rogers testified that Mrs. Norris subtracted these items from total sales without realizing that they had already been omitted. Mrs. Norris testified that she did not completely understand this mistake until preparation for this trial.

Respondent has not presented any evidence disputing Mr. Rogers' or Mrs. Norris' description of this mistake. Rather, respondent relies on a theory that requires the Court to assume that because Mrs. Norris was responsible for the market's bookkeeping, and because Mr. Rogers was not involved in the preparation of petitioners' 1996 and 1998 income tax returns and therefore did not have firsthand knowledge of what was and was not reported, Mrs. Norris intentionally underreported total sales

from the Z-out reports for the purpose of evading tax.  We cannot draw that conclusion.  Accordingly, respondent has failed to prove by clear and convincing evidence that Mrs. Norris displayed a fraudulent intent to evade taxes for 1996 and 1998.

V.    Statute of Limitations

As stated above, the limitations period for assessment is 3 years from the later of the filing date or the due date of the return.  Sec. 6501(a).  The parties do not dispute that the notice of deficiency, even with agreed-upon extensions, was not issued within the statutory deadline for either 1996 or 1998 as set forth in section 6501(a).

Respondent relied on the fraud exception of section 6501(c) to issue the notice of deficiency for both 1996 and 1998.  The Court previously held that the limitations period for Mr. Norris for 1998 remained open because Mr. Norris is estopped from denying fraud.  Generally, in the case of a joint return, proof of fraudulent intent as to either taxpayer lifts the bar of the statute of limitations as to both taxpayers.  See Vannaman v. Commissioner, 54 T.C. 1011, 1018 (1970).

A refinement to the general rule exists when the fraud of one spouse is established via collateral estoppel from a section 7201 conviction.  Id.  The innocent spouse is not estopped from denying that the joint return is fraudulent.  Id.  If such a

challenge is raised, the Commissioner must affirmatively prove by clear and convincing evidence that at least one of the spouses filed with the requisite fraudulent intent. Id. Such a showing will then lift the bar of limitations as to both spouses and will render the nonestopped spouse liable for the subject deficiency. Id. Thus, the limitations period for 1998 is not open for Mrs. Norris unless respondent affirmatively proves, by clear and convincing evidence, that Mr. Norris committed fraud in 1998. Id.

In the plea hearing of Mr. Norris' criminal case, he admitted to taking affirmative acts in 1998 to evade tax. This admission is clear and convincing evidence of Mr. Norris' fraudulent conduct in 1998. Accordingly, at the time the notice of deficiency was issued, the limitations period for 1998 remained open for Mrs. Norris as well.

Pursuant to section 6663(c), Mrs. Norris is not liable for the fraud penalties. She is, however, jointly and severally liable for any deficiencies in 1998 resulting from the findings and conclusions reached herein with respect to Mr. Norris. See sec. 6013(d)(3). With respect to 1996, because the fraud penalty does not apply to either petitioner, respondent may not rely on section 6501(c) to extend the limitations period. Accordingly, the period of limitations was closed on October 22, 2008, when

the notice of deficiency was issued, and therefore it is invalid for 1996.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered under Rule 155</u>.