T.C. Memo. 2011-9

UNITED STATES TAX COURT

DAVID W. GOLDSTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21681-07, 16037-08.     Filed January 11, 2011.

David W. Goldston, pro se.

<u>Lauren B. Epstein</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  In separate notices of deficiency, respondent
determined deficiencies and additions to tax as follows:

|      |            | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(f) | Sec. 6651(a)(2) | Sec. 6654 |
|------|-----------|-------------|-----------------|-----------|
| 1992 | $108,993 | $81,744.75 | --- | $4,753.78 |
| 1993 | 26,993 | 20,244.75 | --- | 1,130.99 |
| 1994 | 21,531 | 15,609.98 | $5,382.75 | 1,117.32 |
| 1995 | 51,236 | 37,146.10 | 12,809.00 | 2,778.13 |
| 1996 | 67,931 | 49,249.98 | 16,982.75 | 3,615.65 |
| 1997 | 70,330 | 50,989.25 | 17,582.50 | 3,762.68 |
| 1998 | 36,645 | 26,567.63 | 9,161.25 | 1,676.82 |
| 1999 | 83,261 | 60,364.23 | 20,815.25 | 4,029.48 |
| 2000 | 95,074 | 68,928.65 | 23.768.50 | 5,078.36 |
| 2001 | 102,138 | 74,050.05 | 25,534.50 | 4,081.80 |
| 2002 | 87,135 | 63,172.88 | 21,783.75 | 2,911.83 |
| 2003 | 117,729 | 85,353.53 | [1]27,077.67 | 3,080.97 |
| 2004 | 99,240 | 71,949.00 | [1]16,870.80 | 2,880.65 |
| 2005 | 96,829 | 70,201.02 | [1]10,651.19 | 3,883.95 |

[1]The addition to tax will continue to accrue from the due date of the return at a rate of 0.5 percent for each month, or fraction thereof, of nonpayment, not exceeding 25 percent.

The cases were consolidated for trial, briefing, and opinion. After concessions, the issue for decision is whether petitioner is liable for the additions to tax under section 6651(f) for fraudulent failure to file returns. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Florida at the time the petitions were filed. At all material times, he was married to Nancy Sharp Goldston.

Petitioner received a degree in dentistry in 1964 and was a practicing dentist during the years in issue.  Before 1990, he operated his dental practice in corporate form.  In 1990, he sold his practice.  Thereafter he worked for various persons and entities.  His gross receipts from dentistry for the years in issue were as follows:

| Year | Gross Receipts |
|------|----------------|
| 1992 | $86,557 |
| 1993 | 63,558 |
| 1994 | 165,363 |
| 1995 | 368,711 |
| 1996 | 473,557 |
| 1997 | 489,331 |
| 1998 | 274,353 |
| 1999 | 572,016 |
| 2000 | 645,580 |
| 2001 | 699,487 |
| 2002 | 575,487 |
| 2003 | 830,812 |
| 2004 | 701,565 |
| 2005 | 684,633 |

Petitioner also received taxable income from various sources during the years in issue, including taxable retirement distributions of $174,871 in 1992; sales of property; rentals; interest; and, beginning in 2002, Social Security benefits. Petitioner's total taxable income for the years in issue was as follows:

| Year | Taxable Income |
|------|----------------|
| 1992 | $276,657 |
| 1993 | 70,543 |
| 1994 | 53,081 |
| 1995 | 131,391 |
| 1996 | 171,239 |

| | |
|---|---|
| 1997 | 176,916 |
| 1998 | 93,179 |
| 1999 | 206,633 |
| 2000 | 234,059 |
| 2001 | 253,941 |
| 2002 | 221,100 |
| 2003 | 316,680 |
| 2004 | 268,118 |
| 2005 | 261,811 |
| Total | 2,735,348 |

Beginning in or about 1991, petitioner began a course of conduct intended to conceal the sources and amount of income that he received. That conduct and concealment continued through the years in issue, although the sources of income and the names of the entities used varied from year to year. Petitioner placed funds and property in the names of nominees and trusts and used cashier's checks, money orders, and currency to conduct transactions, all with the intent and for the purpose of concealing his income and assets from the Internal Revenue Service (IRS).

Petitioner opened bank accounts, operated a dentistry practice, engaged in various real estate transactions, and purchased residential real property and personal vehicles in the names of various trusts. The trust names so employed included Sharp Management Trust, Sharpstone Irrevocable Trust, Cool Stream Holding Trust, Old Times Holding Trust, High Mountain Holding Trust, Old Oak Holding Trust, Comfort Holding Trust, Rainy Day Management Trust, Work Holding Trust, Carriage Holding Trust, Blue Lake Holding Trust, Patio Holding Trust, and Sun Stroke

Management Trust.  Petitioner was the grantor of the trusts, managed the assets purportedly held by the trusts, deposited income from his dental practice in trust accounts and paid personal expenses from those accounts, and otherwise treated as his own the assets held in the names of the trusts.

Petitioner failed to file Federal income tax returns for 1992 through 2005.  He espoused frivolous tax arguments and advised others, including patients and an employee, that he was not required to pay taxes.  He did not make any estimated tax payments.

On June 23, 2005, petitioner was convicted of violation of section 7201 on an indictment charging that

> from on or about the 15th day of April, 1991, and
> continuing through in or about September, 2003, * * *
> [petitioner] * * *, did willfully attempt to evade and
> defeat the payment of a substantial amount of federal
> income tax due and owing by him to the United States of
> America for the calendar years 1990 and 1991, by
> concealing and attempting to conceal from the Internal
> Revenue Service the nature and extent of his assets and
> the location thereof, by placing funds and property in
> the names of nominees and trusts, and by utilizing
> cashier's checks, money orders, and currency to conduct
> transactions * * *

On December 16, 2005, petitioner was sentenced to a prison term of 48 months and ordered to be on supervised release for 36 months upon release from prison.  As a condition of his supervised release, petitioner was required to "cooperate with the Internal Revenue Service regarding all outstanding taxes, interest, and penalties * * * [and] provide the Probation Officer

with verification that the income tax obligations are being met to the fullest extent possible."

Since his release, petitioner has not cooperated with the IRS and has not met his income tax obligations.

OPINION

Notwithstanding his recent incarceration, petitioner's denials and defiance of his tax obligations continued through the time of trial of these cases. He admitted that he did not file returns for any of the years in issue. He did not dispute any of the facts establishing his receipt of substantial taxable income during the years in issue, and his receipt of specific items of income was deemed admitted pursuant to Rule 90 by his failure to respond to requests for admissions. No adjustments to the deficiencies determined by respondent are required on this record. The deemed admissions also establish petitioner's liability for additions to tax under sections 6651(a)(2) and 6654. Petitioner failed to file the answering brief ordered by the Court, and thus he has not raised any objections to the extensive and detailed findings of fact proposed in respondent's opening brief. In view of the absence of dispute as to the underlying facts, our findings summarize the material facts without describing the evidentiary detail.

The addition to tax in cases of fraud is a civil sanction provided primarily as a safeguard for the protection of the

revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938).  To sustain the 75-percent addition to tax provided by section 6651(f), respondent has the burden of proving that petitioner's failure to file returns was fraudulent.  See sec. 7454(a); Rule 142(b). (Respondent has pleaded and argued, in the alternative, applicability of the addition to tax under section 6651(a)(1). In view of our conclusion that petitioner's failure to file was fraudulent, we do not consider that alternative.)

In applying the addition to tax under section 6651(f), we consider the same elements, or long-recognized "badges of fraud", discussed in cases applying section 6663 or former section 6653(b)(1).  Clayton v. Commissioner, 102 T.C. 632, 647-653 (1994); see Niedringhaus v. Commissioner, 99 T.C. 202, 211-213 (1992).  Fraud may be proved by circumstantial evidence, and the taxpayer's entire course of conduct may establish the requisite fraudulent intent.  Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).  Circumstantial evidence of fraud present here includes the pattern of failure to file returns, failure to report substantial amounts of income, concealing assets, dealing in cash, failing to maintain records, giving implausible or inconsistent explanations of behavior, and failure to cooperate with taxing authorities in determining petitioner's correct

liability.  See, e.g., <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; <u>Powell v. Granquist</u>, 252 F.2d 56, 60-61 (9th Cir. 1958); <u>Clayton v. Commissioner</u>, <u>supra</u> at 647; <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 20 (1980); <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 199-202 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).

Petitioner argues that he had no intention of breaking the law and that his admitted failure to file returns was not fraudulent.  His filings and his testimony are replete with implausible and inconsistent explanations of his behavior.  He claims that he acted in accordance with the directions of the "trustees", but there is no evidence that anyone other than petitioner and his wife controlled any of the transactions or earned any of the income attributed to him.  He admits that the trusts were funded by "gifts" from him, that his personal expenses were paid from trust bank accounts, and that properties purchased in the names of various trusts were used by him for professional and personal purposes.  According to his testimony, the beneficiaries of the trusts were his children and grandchildren.  He claims that his accountant made mistakes reporting pension plan distributions, and he asserts that his criminal conviction resulted from false testimony.  He asserts that

> My decision to quit paying the tax was made in 1992, not before, and was the result of a letter sent, asking for the basis for their taxing me which received a reply after about 3 months, which was no answer to my question, but simply stated to <u>ignore</u> any correspondence received from them until I received an answer.

In a statement at the conclusion of the trial, he alleged that he was a "victim" of tax shelter promoters at some unidentified time, that thereafter he was repeatedly audited, that he was convicted because of misconduct by his accountant, and that his object was "civil disobedience".

Petitioner engaged in a complex scheme to conceal his income and assets during the years in issue. His taxable income for those years exceeded $2.7 million, and his unreported tax liabilities, before additions to tax, exceeded $1 million. He was convicted of engaging in that conduct in order to defeat the payment of taxes due for 1990 and 1991, and the obvious purpose of continuing the scheme was to evade taxes for the subsequent years as well. The objective facts are clear and convincing evidence of fraud sufficient to satisfy respondent's burden of proof. The additions to tax for fraud have frequently been imposed on taxpayers like petitioner "who were knowledgeable about their taxpaying responsibilities * * * [and] consciously decided to unilaterally opt out of our system of taxation." <u>Miller v. Commissioner</u>, 94 T.C. 316, 335 (1990) (citing numerous

relevant cases); see <u>Niedringhaus v. Commissioner</u>, <u>supra</u> at 212-213.

Petitioner's excuses are unpersuasive, and we do not believe that he acted as he did for nonfraudulent reasons. He has not presented evidence of any consultations with competent tax professionals or reliance on any legal authority for his positions. He incorporated boilerplate frivolous arguments about the Paperwork Reduction Act in his petition and alleged in his pretrial memorandum that the IRS lacks delegated authority to collect tax. Perhaps he believes that feigning lack of understanding or sincere beliefs will help him avoid the consequences of his deliberate choices. In view of his education, sophistication and success in conducting his profession and business transactions, persistence after his criminal conviction, and acknowledged "civil disobedience", we reject any suggestion of good faith. See <u>Chase v. Commissioner</u>, T.C. Memo. 2004-142.

We have considered the other arguments of the parties. They are irrelevant, moot, or otherwise lack merit. For the reasons explained above,

<u>Decisions will be entered</u>

<u>for respondent</u>.