# United States Tax Court

T.C. Memo. 2025-70

REMUS BELEIU AND NAOMI J. BELEIU,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 16518-19.                                  Filed July 2, 2025.

————

*J. Scott Broome* and *John T. Bender*, for petitioners.

*Nancy P. Klingshirn* and *John D. Davis*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

COPELAND, *Judge*: Remus Beleiu owned and operated an information technology business, Remtrix LLC (Remtrix), in 2012–15 and a consulting business, ITrainX Consulting Group (ITrainX), in 2013–15. On the Beleius' timely filed joint tax returns for 2012–15 (years at issue), Remtrix's business operations were reported on Schedules C, Profit or Loss From Business; and the operations of ITrainX were not reported. The Commissioner of Internal Revenue (Commissioner) examined those returns and proposed federal income tax deficiencies that were ultimately agreed to by the Beleius. However, they disagreed with the Commissioner's proposed section 6663[1] civil fraud penalties for the years at issue and a section 6654(a) addition to

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, Rule references are to the Tax Court Rules of Practice and Procedure, and all dollar amounts are rounded to the nearest dollar.

**[\*2]** tax for 2015. Thus, the Commissioner issued a Notice of Deficiency on June 6, 2019, determining the following:

| Tax Year | § 6663 Penalty | § 6654(a) Addition to Tax |
|----------|----------------|---------------------------|
| 2012 | $25,407 | — |
| 2013 | 39,145 | — |
| 2014 | 30,356 | — |
| 2015 | 12,050 | $982 |

In the alternative to the section 6663 civil fraud penalties listed above, the Commissioner determined section 6662(a) accuracy-related penalties. The Beleius timely petitioned this Court.

After concessions,[2] the only issue remaining for consideration is whether Mrs. Beleiu is liable for civil fraud penalties for tax years 2012–14.

FINDINGS OF FACT

These findings are derived from the parties' Pleadings, a Stipulation of Facts with attached Exhibits, and the documents and testimony admitted into evidence at trial. The Beleius resided in Ohio when the Petition was timely filed.

Mr. Beleiu was a member of and began operating Remtrix in 2012 and ITrainX in 2013. Mrs. Beleiu was also a member[3] of Remtrix; however, her primary occupation was as a financial analyst for University Hospitals System for the years at issue. She earned wages of $54,825 in 2012, $55,351 in 2013, and $56,265 in 2014 as a financial

---

[2] As indicated, after the examination the Beleius agreed to assessment of the deficiencies determined for the years at issue, but not the penalties nor the 2015 addition to tax. Before trial the Commissioner conceded, as to 2015 only, the proposed section 6663 civil fraud penalty because of failure to obtain managerial approval under section 6751(b) for that year, and the section 6654(a) addition to tax. At trial the parties agreed that Mr. and Mrs. Beleiu are liable for the accuracy-related penalties for 2012–14. As to Mrs. Beleiu, the Commissioner continues to assert that those penalties apply only in the alternative to the section 6663 civil fraud penalties, which remain at issue for her (except for 2015). The Commissioner concedes that Mr. Beleiu is not liable for the civil fraud penalties for the years at issue.

[3] At trial Mrs. Beleiu stated that she was a "limited partner," but Remtrix appears to be a limited liability company that is disregarded as an entity separate from its member owners.

[*3] analyst, amounts substantially higher than those of Remtrix as reported on the joint returns.

Mrs. Beleiu holds an undergraduate degree in accounting and a master of business administration (M.B.A.) degree with a concentration in accounting from John Carroll University. She was the recordkeeper for both Remtrix and ITrainX and had signatory authority on their bank accounts.

During the years at issue Mr. Beleiu traveled extensively for business, and Mrs. Beleiu, in addition to working full time, maintained the household for the Beleius' four children. The Beleius' eldest daughter had significant behavioral issues that Mrs. Beleiu had to manage largely on her own.

Mrs. Beleiu prepared and timely filed a joint Form 1040, U.S. Individual Income Tax Return, for each of the years at issue. Mrs. Beleiu did not contemporaneously account for Remtrix's or ITrainX's income and expenses; instead, she prepared their joint returns, including any Schedules C, by working from bank statements, invoices, and expense receipts, which were strewn around their home in "piles of paperwork." On the Schedule C attached to their tax return for 2012, the Beleius reported gross income of $10,505 and net profit of $2,180 from Remtrix. On the Schedule C attached to their tax return for 2013, the Beleius reported gross income of $38,946 and net profit of $30,506 from Remtrix. On the Schedule C attached to their tax return for 2014, the Beleius reported gross income of $43,000 and net profit of $37,400 from Remtrix.[4] None of the tax returns included a Schedule C for ITrainX.

The Internal Revenue Service selected the Beleius' 2012, 2013, and 2014 returns for examination. Tax Compliance Officer Nancy O'Haire (TCO O'Haire) conducted the examination. For their initial appointment, TCO O'Haire instructed the Beleius to bring books and records reflecting their income and expenses, workpapers used in preparing their tax returns, and bank statements, deposit slips, and canceled checks covering the period from December 1, 2011, to February 1, 2015, from all of their personal and business bank accounts.

---

[4] Because any challenge to the 2015 penalty and addition to tax was conceded by the Commissioner shortly before trial, the parties did not provide tax returns nor other income information for tax year 2015.

**[\*4]** At the first meeting on January 26, 2016, Mrs. Beleiu brought bank statements relating to the Beleius' joint checking account and Remtrix's bank account but no statements relating to individually held checking and savings accounts and none relating to ITrainX. For Remtrix she provided income statements she had prepared, Forms 1099–MISC, Miscellaneous Income, and Forms 1099–K, Payment Card and Third Party Network Transactions; she did not bring any of the requested documentation relating to the reported expenses. She likewise noted the existence of ITrainX at this meeting but indicated that it was a dormant business, i.e., it had an Employer Identification Number (EIN) but had not generated any income in 2013 or 2014.

As to the documents produced at the January 2016 meeting:

1) For the 2012 tax year the gross amount of payment card/third-party network transactions shown on the single Form 1099–K Remtrix received for that year, $10,505, matched gross sales shown on Remtrix's income statement and the amount of Remtrix's Schedule C gross income reported on the Beleius' 2012 tax return.

2) For the 2013 tax year, the net income shown on Remtrix's income statement, $38,946, matched the amount of Schedule C gross income reported on the Beleius' tax return. However, unlike the income for 2012, the $38,946 gross income reported on the Schedule C did not match the gross sales on Remtrix's income statement, $203,033, nor the amounts from the Forms 1099–MISC and Form 1099–K received for that year, which totaled $275,132. In addition the Schedule C showed a deduction for "Car and truck expenses"[5] of $6,780, even though those expenses were previously subtracted to arrive at the gross income reported on the return, resulting in double counting of that deduction.

3) For the 2014 tax year the net income shown on Remtrix's 2014 income statement was $48,494, which matched neither the $43,000 gross income nor the $37,400 net profit reported on Remtrix's Schedule C for the Beleius' tax return. In addition, unlike the income for 2012, the $43,000 gross income reported on the Schedule C did not match gross sales on Remtrix's income statement, $149,577, nor the cumulative amounts from the Forms

---

[5] On Remtrix's 2013 income statement the $6,780 is labeled "Vehicle Expenses."

**[\*5]** 1099–MISC and Form 1099–K received for that year, which totaled $150,127 for Remtrix and $71,250 for ITrainX.

Because of the discrepancies noted and incomplete records provided at the first meeting, TCO O'Haire requested a follow-up meeting for Mrs. Beleiu to provide the missing bank statements and revised Schedules C for each of the tax years 2012–14.

At the second meeting on March 9, 2016, Mrs. Beleiu provided mileage logs, hotel invoices, and amended Schedules C for Remtrix for 2012, 2013, and 2014. Remtrix's 2012 amended Schedule C was identical in all respects to the one attached to the Beleius' original 2012 tax return. Remtrix's 2013 amended Schedule C reported gross income equal to the totals from Forms 1099–MISC received for that year but continued to omit amounts reported on Forms 1099–K. Remtrix's 2014 amended Schedule C reported gross income of $149,577, whereas Remtrix's Forms 1099–MISC and 1099–K reported $150,127. She did not provide any Schedules C for ITrainX nor any additional bank statements. Given her difficulty in assembling this documentation, Mrs. Beleiu agreed with TCO O'Haire that the simplest way to obtain the requested bank statements would be by issuing summonses to the banks.

After that second meeting, TCO O'Haire summoned all the Beleius' bank statements from J.P. Morgan Chase and U.S. Bank and conducted a bank deposits analysis from the statements received. The summoned bank accounts encompassed both (1) accounts for which Mrs. Beleiu had provided some bank statements at the first meeting and (2) accounts discovered by TCO O'Haire by looking at transfers to and from the accounts identified by Mrs. Beleiu. The variance in bank deposits compared to amounts reported on Schedules C was as follows for Remtrix:

| Tax Year | As Reported | Bank Deposits | Difference |
|----------|-------------|---------------|------------|
| 2012 | $10,505 | $208,221 | $197,716 |
| 2013 | 38,946 | 334,064 | 295,118 |
| 2014 | 43,000 | 239,789 | 196,789 |

These amounts were likewise significantly larger than reported on the amended Schedules C provided at the second meeting. There were also significant dealings in cash by both Mr. Beleiu and Mrs. Beleiu. For example, in 2012 the Beleius deposited $39,249 in cash to

[*6] their joint checking account, and in 2013, they deposited over $17,000 in cash to Remtrix's bank account. In addition, in 2014 Mrs. Beleiu deposited at least $21,600 in cash to ITrainX's bank account. TCO O'Haire likewise searched for third-party reporting related to ITrainX's EIN. ITrainX had third-party receipts of $38,600 for 2013 and $71,250 for 2014. After obtaining managerial approval for penalties, TCO O'Haire issued a 30-day letter to the Beleius on August 1, 2016, which included tax deficiencies and section 6663 civil fraud penalties for tax years 2012–14.

Shortly thereafter the Beleius retained counsel and accountants to assist with the examination. TCO O'Haire met with the Beleius' representatives on October 27, 2016. At this meeting, TCO O'Haire unsuccessfully attempted to reconcile the data from her bank deposits analysis with the information that the Beleius' representatives had prepared. The discrepancy arose because Mrs. Beleiu had neither informed the Beleius' representatives of all of their bank accounts nor revealed the existence of ITrainX. At some point thereafter, TCO O'Haire expanded the examination to include the 2015 tax year.

On November 1, 2017, TCO O'Haire issued Form 4549–A, Income Tax Examination Changes, reflecting additional gross income and allowing additional expense deductions, which resulted in determinations of federal income tax deficiencies of $33,876, $52,193, $40,474, and $16,067 for 2012, 2013, 2014, and 2015, respectively. The Form 4549–A indicated that "[t]he report includes alternative issue(s) for which the tax computation has not been computed" and refers to an unidentified attachment. On December 21, 2017, the Beleius agreed to the tax deficiencies but appealed any penalties and additions to tax. The appeal was unsuccessful. As a result the Commissioner's Office of Appeals[6] issued the June 6, 2019, Notice of Deficiency which is the basis for this case.

## OPINION

I.   *Evidentiary Standard*

"If any part of any underpayment of tax required to be shown on a return is due to fraud," section 6663(a) imposes a penalty of 75% of the portion of the underpayment due to fraud. The Commissioner has the

---

[6] On July 1, 2019, the Commissioner's Office of Appeals was renamed the Internal Revenue Service Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019).

[*7] burden of proving fraud, and he must prove it by clear and convincing evidence.  *See* I.R.C. § 7454(a); Rule 142(b); *Richardson v. Commissioner*, T.C. Memo. 2006-69, 91 T.C.M. (CCH) 981, 996, *aff'd*, 509 F.3d 736 (6th Cir. 2007).

II.    *Supervisory Approval*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination."  The parties have stipulated that written supervisory approval of the civil fraud penalties for the Beleius' 2012–14 tax years was timely secured.

III.    *2012–14 Civil Fraud Penalties*

To sustain his burden to prove that civil fraud penalties should be imposed, the Commissioner must establish that (1) there was an underpayment of tax for each year at issue and (2) at least some portion of the underpayment for each year was due to fraud.  *Hebrank v. Commissioner*, 81 T.C. 640, 642 (1983).  If the Commissioner proves that some portion of an underpayment was due to fraud, then "the entire underpayment shall be treated as attributable to fraud" unless the taxpayer shows, by a preponderance of the evidence, that the balance was not so attributable.  I.R.C. § 6663(b).  On the basis of the concessions of the parties, *see supra* note 2, we must decide only whether the facts establish that at least some of the underpayments for tax years 2012–14 are attributable to fraud as to Mrs. Beleiu.

Fraud is intentional wrongdoing designed to evade tax believed to be owing.  *Neely v. Commissioner*, 116 T.C. 79, 86 (2001).  The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *Estate of Pittard v. Commissioner*, 69 T.C. 391, 400 (1977).  Fraud is not to be presumed or based upon mere suspicion. *Petzoldt v. Commissioner*, 92 T.C. 661, 699 (1989).  But because direct proof of a taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence. *Id.*  The Commissioner satisfies his burden of proof by showing "that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." *Parks v. Commissioner*, 94 T.C. 654, 661 (1990).  The taxpayer's entire course of conduct may be examined to establish the requisite intent, and an intent to mislead may

**[\*8]** be inferred from a pattern of conduct. *Stone v. Commissioner*, 56 T.C. 213, 224 (1971).

Circumstances that may indicate fraudulent intent, often called "badges of fraud," include, but are not limited to (1) understating income, (2) keeping inadequate records, (3) giving implausible or inconsistent explanations of behavior, (4) concealing income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) supplying incomplete or misleading information to a tax return preparer, (8) providing testimony that lacks credibility, (9) filing false documents (including false tax returns), (10) failing to file tax returns, and (11) dealing in cash. *Schiff v. United States*, 919 F.2d 830, 833 (2d Cir. 1990) (per curiam); *Bradford v. Commissioner*, 796 F.2d 303, 307–08 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-601; *Solomon v. Commissioner*, 732 F.2d 1459, 1461–62 (6th Cir. 1984), *aff'g per curiam* T.C. Memo. 1982-603, 44 T.C.M. (CCH) 1410; *Parks*, 94 T.C. at 664–65; *Recklitis v. Commissioner*, 91 T.C. 874, 910 (1988); *Morse v. Commissioner*, T.C. Memo. 2003-332, 86 T.C.M. (CCH) 673, 675, *aff'd*, 419 F.3d 829 (8th Cir. 2005). No single factor is dispositive, but the existence of several factors is "persuasive circumstantial evidence of fraud." *Niedringhaus v. Commissioner*, 99 T.C. 202, 211 (1992). We evaluate these badges of fraud taking into consideration a taxpayer's education and sophistication. *Clark v. Commissioner*, T.C. Memo. 2021-114, at \*37.

Two of the factors above are neutral or weigh against a finding of fraud: namely, the factors regarding a taxpayer that engages in illegal activity or fails to file returns. Mrs. Beleiu did not engage in any illegal activities, and she timely filed returns for the years at issue. As to the remaining nine factors, they indicate that Mrs. Beleiu acted with fraudulent intent. A discussion of those nine factors follows.

A.    *Understating Income*

A pattern of substantially underreporting income over several successive years can be strong evidence of fraudulent intent. *See Zhadanov v. Commissioner*, T.C. Memo. 2002-104, 83 T.C.M. (CCH) 1553, 1560. Such a pattern evidences fraudulent intent "even where the record is 'devoid of the usual indicia of fraud.'" *Isaacson v. Commissioner*, T.C. Memo. 2020-17, at \*48–49 (quoting *Otsuki v. Commissioner*, 53 T.C. 96, 107–08 (1969)), *aff'd*, No. 20-71121, 2022 WL 541617 (9th Cir. Feb. 23, 2022).

[*9]   For tax year 2012 Mrs. Beleiu reported $10,505 of Schedule C gross income. The record establishes additional income of $197,716, meaning that Mrs. Beleiu reported only 5% of the Schedule C gross income that should have been reported for 2012. For tax year 2013 Mrs. Beleiu reported $38,946 of Schedule C gross income. The record establishes additional income of $295,118, meaning that Mrs. Beleiu reported only 12% of the Schedule C gross income that should have been reported for 2013. For tax year 2014 Mrs. Beleiu reported $43,000 of Schedule C gross income. The record establishes additional income of $196,789, meaning that Mrs. Beleiu reported only 18% of the Schedule C gross income that should have been reported in 2014. While the Beleius assert that the errors were a result of Mrs. Beleiu's distraction with her daughter and lack of time to properly prepare the returns, the Court does not find this explanation credible given the magnitude of the underreporting. Further, this Court has previously held that being too busy, too tired, or distracted is not a reasonable explanation for grossly inaccurate reporting of income. *See Otsuki*, 53 T.C. at 109–110; *Robleto v. Commissioner*, T.C. Memo. 2008-195, *aff'd*, 471 F. App'x 576 (9th Cir. 2012).

As detailed above, Mrs. Beleiu had a history of significantly underreporting income, and thus the understatement of income factor weighs in favor of a finding of fraud.

### B.   *Keeping Inadequate Records*

A taxpayer must maintain records sufficient for the Commissioner to determine his or her tax liability. I.R.C. § 6001. "Fail[ing] to keep or produce adequate records to support . . . tax return positions" is an indicator of fraud. *Scott v. Commissioner*, T.C. Memo. 2012-65, 103 T.C.M. (CCH) 1310, 1317. Although Mrs. Beleiu admitted to being the recordkeeper and had bank signatory authority for both Remtrix and ITrainX, she did not create any contemporaneous accounting records for either entity. Rather, incomplete bank statements and individual invoices were retained to document the income and expenses reported. In fact the Beleius' original income and expense documentation was disorderly and kept in "piles of paperwork."

On the whole, despite her advanced degrees in accounting, Mrs. Beleiu did not maintain appropriate books and records. Thus, the inadequate records factor weighs in favor of a finding of fraud.

**[\*10]** C. *Giving Implausible or Inconsistent Explanations of Behavior*

A taxpayer's implausible or inconsistent explanations for her actions may constitute evidence of fraudulent intent. *See Richardson v. Commissioner*, 509 F.3d at 743. We may consider a taxpayer's filings and testimony as evidence of implausible or inconsistent explanations. *See Goldston v. Commissioner*, T.C. Memo. 2011-9, 101 T.C.M. (CCH) 1026, 1028.

Mrs. Beleiu has an undergraduate accounting degree and an M.B.A. with a concentration in accounting, and she works as a financial analyst. For 2012 the gross income she reported on Remtrix's Schedule C matched the amount reported on the Form 1099–K issued to Remtrix but did not include additional amounts deposited into business bank accounts. For 2013 and 2014 she claims to have reported Remtrix's *net* income as its *gross* income, but she also subtracted additional deductions. It strains credulity that someone with Mrs. Beleiu's background would confuse fundamental accounting concepts such as "net" and "gross." It is likewise implausible for a taxpayer to report gross income in one year and net income in the next. Moreover, it is internally inconsistent to assert that a given figure is "net" and then claim further deductions against it. Case in point: for 2013, a year in which gross income of $334,064 was reported as $38,946 on Remtrix's Schedule C, a deduction of $6,780 for car and truck expenses was claimed (along with a deduction of $1,660 for business use of the home) to arrive at net profit of $30,506. On Remtrix's income statement provided by Mrs. Beleiu, a $6,780 "vehicle expense" was subtracted to arrive at the reported net income of $38,946, the amount matching Remtrix's Schedule C gross income, clearly resulting in double counting of that deduction.

In sum Mrs. Beleiu's explanations were self-contradictory and implausible in light of her education and training. Thus, the implausible or inconsistent explanations factor weighs in favor of a finding of fraud.

D. *Concealing Income or Assets*

If a taxpayer conceals her ownership of assets or covers up sources of income, such concealment supports a finding of fraud. *Spies v. United States*, 317 U.S. 492, 499 (1943). A taxpayer may conceal her income by revealing some bank accounts but not others during an examination.

[*11] *Energy Rsch. & Generation, Inc. v. Commissioner*, T.C. Memo. 2011-45, 101 T.C.M. (CCH) 1205, 1216.

For her first meeting with TCO O'Haire, Mrs. Beleiu was instructed to bring (1) books and records, (2) workpapers, and (3) bank statements, canceled checks, and deposit slips for all of her accounts. She brought income statements for Remtrix, copies of Forms 1099–MISC and 1099–K issued to Remtrix, and an incomplete set of bank statements. For her second meeting with TCO O'Haire, Mrs. Beleiu was instructed to bring the missing bank records and amended Schedules C. However, no further bank records were brought to this meeting, and not all income was reported on Remtrix's amended Schedules C that were brought. In fact she later even concealed such information from her own representatives.

Moreover, Mrs. Beleiu concealed information relating to ITrainX, providing neither bank statements nor other indications of income to TCO O'Haire or Mrs. Beleiu's own representatives. In the end TCO O'Haire was only able to obtain a complete set of bank records by issuing summonses to J.P. Morgan Chase and U.S. Bank. Looking at the complete bank records, it is apparent that Mrs. Beleiu selectively provided bank records for some accounts while concealing others from TCO O'Haire and the representatives. In fact some of the omitted accounts were discovered only upon analyzing transfers to and from the revealed accounts. At trial Mrs. Beleiu attempted to downplay the omissions by suggesting that the documents she provided were equivalent to directly providing account numbers for each of the relevant bank accounts. However, "[t]he mere existence of a paper trail documenting a taxpayer's income or expenses does not negate a finding of fraudulent intent." *Vanover v. Commissioner*, T.C. Memo. 2012-79, 103 T.C.M. (CCH) 1418, 1422. Similarly, Mrs. Beleiu's selective revelations are akin to a diversionary sleight of hand rather than full transparency.

Mrs. Beleiu did not attach Schedule C for ITrainX to the tax return for either 2013 or 2014. At the first meeting with TCO O'Haire, Mrs. Beleiu indicated that in 2013 ITrainX was a dormant business that had not yet taken off. She also asserted that ITrainX had no income in 2013 or 2014. However, banking records revealed that ITrainX had receipts of $38,600 for 2013 and $71,250 for 2014. These nonzero receipts are impossible to reconcile with Mrs. Beleiu's depiction of a dormant business.

[*12] Throughout the examination, Mrs. Beleiu repeatedly provided inadequate and partial responses that concealed actual income. The concealment of income or assets factor weighs in favor of a finding of fraud.

### E.    *Failing to Cooperate with Tax Authorities*

A taxpayer's failure to cooperate with tax authorities, including a failure to cooperate with revenue agents during an examination, can indicate fraudulent intent. *Grosshandler v. Commissioner*, 75 T.C. 1, 19–20 (1980). "[M]isleading statements during an audit, even from an unsophisticated taxpayer, may indicate fraudulent intent." *Clark*, T.C. Memo. 2021-114, at *37. Further, failure to disclose to revenue agents the existence of bank accounts in which income was deposited is indicative of fraud. *See Solomon*, 44 T.C.M. (CCH) at 1414.

Throughout the exam process, Mrs. Beleiu was neither forthright nor forthcoming. Although the purpose of this first meeting was to discuss the deductions the Beleius had claimed, Mrs. Beleiu did not proffer a complete set of books and records. She provided an income statement for 2012 consistent with the single Form 1099–K Remtrix received for that year. Both the 2012 tax return and the income statement omitted significant receipts only discovered in TCO O'Haire's bank deposits analysis. When given the opportunity to provide an amended Schedule C for 2012, Mrs. Beleiu resubmitted the same schedule included with the originally filed tax return. Both the original and amended Schedules C for Remtrix for 2013 and 2014 omitted significant portions of Remtrix's income. She also misled, stating that ITrainX was an inactive business. Rather than cooperating in the examination, she provided an incomplete set of bank statements for a subset of business accounts and inaccurate accounting records.

The lack of cooperation with tax authorities factor weighs in favor of a finding of fraud.

### F.    *Supplying Incomplete or Misleading Information to Return Preparers*

A taxpayer's failure to provide her tax return preparer complete and accurate records may reflect the taxpayer's intent to conceal and deceive. *See Dubose v. Commissioner*, T.C. Memo. 1996-99, 71 T.C.M. (CCH) 2299, 2301; *Scallen v. Commissioner*, T.C. Memo. 1987-412, 54 T.C.M. (CCH) 177, 208, *aff'd*, 877 F.2d 1364 (8th Cir. 1989).

**[\*13]** Mrs. Beleiu prepared the joint returns herself rather than providing incomplete information to a tax return preparer. However, in the course of the exam the Beleius retained counsel and accountants to represent them. Mrs. Beleiu provided those representatives with documents that purportedly supported all of the income and expenses reported. It later became apparent that Mrs. Beleiu had provided incomplete information to her representatives. Notably, she had not shared all bank records nor even revealed the existence of ITrainX.

While providing incomplete or misleading information to a return preparer is not precisely the same as failing to provide accurate information to a representative that is interacting with the Internal Revenue Service on behalf of the taxpayer during an examination, it is similarly concerning. Both acts are animated by the same intent. Accordingly, supplying incomplete or misleading information to return preparers or representatives is indicative of fraud.

G.      *Providing Testimony that Lacks Credibility*

Providing testimony at trial that is not credible is a badge of fraud. *Morse*, 86 T.C.M. (CCH) at 675. Mrs. Beleiu did not provide credible testimony at trial. On numerous occasions, her testimony was contradictory and inaccurate. For example, her claim that she had mistakenly reported net income instead of gross income is undercut by the additional deductions claimed. She referred to her husband as the breadwinner even though her wages exceeded the amounts she reported as his gross income for all years at issue, flatly contradicting her own story. She could not explain her failure to report ITrainX's business operations on the 2013 and 2014 tax returns. Mrs. Beleiu's educational background and employment as a financial analyst make such errors all the more unacceptable.

Thus, the lack of credibility factor weighs in favor of a finding of fraud.

H.      *Filing False Documents (Including False Tax Returns)*

Filing false documents (including false tax returns) with the Internal Revenue Service supports an inference of fraudulent intent. *Isaacson*, T.C. Memo. 2020-17, at \*54. The returns filed by Mrs. Beleiu for the years at issue were, in a word, fraudulent. In fact the Beleius have conceded that the income tax returns filed were false. They fraudulently represented actual reportable income for each of the years

**[\*14]** at issue. In light of Mrs. Beleiu's pattern of evasiveness, the filing false documents factor weighs in favor of a finding of fraud.

I. *Dealing in Cash*

Extensive dealing in cash to avoid scrutiny of a taxpayer's finances is a badge of fraud. *See Bradford v. Commissioner*, 796 F.2d at 308. Fraudulent intent may be inferred when a taxpayer handles her affairs in a manner designed "to avoid making the records usual in transactions of the kind." *Spies*, 317 U.S. at 499. In particular, when a taxpayer's dealings in cash are accompanied by attempts to conceal transactions or avoid cash transaction reporting requirements, that course of conduct is probative evidence of fraud. *See Valbrun v. Commissioner*, T.C. Memo. 2004-242, 88 T.C.M. (CCH) 385, 387.

For the years at issue Mrs. Beleiu dealt in cash in a number of instances. In 2012 $39,248.52 in cash was deposited to the Beleius' joint checking account; and in 2013, over $17,000 in cash was deposited in Remtrix's bank account. Mrs. Beleiu made a number of those deposits. In 2014 Mrs. Beleiu deposited at least $21,600 in cash to ITrainX's bank account. Mrs. Beleiu was unable to establish the source of or provide an explanation for these moneys.

In light of Mrs. Beleiu's dealings in cash and the absence of a sufficient explanation, the dealing in cash factor weighs in favor of a finding of fraud.

IV. *Conclusion*

Considering the record in toto, all factors except for those related to not filing returns and engaging in illegal activities support a finding of fraud by Mrs. Beleiu. We hold that the Commissioner has carried his burden of proving fraud by clear and convincing evidence. We therefore sustain the Commissioner's determination that Mrs. Beleiu is liable for section 6663(a) civil fraud penalties for 2012, 2013, and 2014. Because we have sustained the section 6663(a) penalties determined against Mrs. Beleius, the Beleius' concession on the alternative position that Mrs. Beleiu is liable for the section 6662(a) penalties is not considered.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

**[\*15]**  To reflect the foregoing,

*An appropriate decision will be entered.*